**Zeferino GUZMAN–GUZMAN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 76–3114.

United States Court of Appeals, Ninth Circuit.

Aug. 25, 1977.

David K. Kroll, Submitted on Briefs, Lewis & Kroll, San Diego, Cal., for petitioner.

Lawrence W. Chamblee, Atty. Criminal Division U. S. Dept. of Justice, Washington, D. C., Terry Knoepp, U. S. Atty., San Diego, Cal., Asst. Atty. Gen., Crim. Div., U. S. Dept. of Justice, Washington, D. C., Brian Simpson, Trial Atty., I&NS, San

Francisco, Cal., Bernard S. Karmoil, Regional Counsel, I&NS, Terminal Island, San Pedro, Cal., for respondent.

Before BROWNING, KOELSCH and SNEED, Circuit Judges.

PER CURIAM:

Petitioner Zeferino Guzman-Guzman (Guzman) is a permanent-resident alien charged with being deportable for knowingly and for gain assisting aliens to enter the United States illegally. See 8 U.S.C. § 1251(a)(13). After a hearing before an immigration judge Guzman was found deportable and this finding was affirmed by the Board of Immigration Appeals. We reverse.

Guzman's difficulties commenced when he was stopped by an officer of the California Highway Patrol near Palm Springs, California while driving a car in which four aliens were passengers. In due course each of the four alien passengers made statements written in English to immigration officers in which each said in substance that Guzman was assisting them to enter the United States illegally for $50 each, payable after each found work. Not one of the alien passengers spoke or read English.

At Guzman's deportation hearing three of the four alien passengers testified. Over timely objection the written statements of all four of the passenger-aliens were introduced. However, each of the three witnesses testified that the statements reflected a "misunderstanding" about payment. Each testified that any payment to Guzman was intended to be voluntary on their part and did not represent payment for his assistance to enter the United States. Each also asserted that Guzman did not expect payment. None of the immigration officers to whom the statements were made appeared at the deportation hearing.

Nonetheless, the immigration judge admitted the written statements and,

after viewing the demeanor of the three alien witnesses, found that Guzman had knowingly and for gain assisted aliens to enter the United States illegally. We agree that the statements were admissible but hold that on this record the finding of the immigration judge, which was affirmed by the Board, is not supported by reasonable, substantial, and probative evidence. See 8 U.S.C. § 1105a(a)(4).

With respect to admissibility of the written statements, the threshold standard is "fundamental fairness" and probativeness. Martin-Mendoza v. I&NS, 499 F.2d 918, 921 (9th Cir. 1974). These statements are not so infirm as to be unable to clear this modest barrier. However, whether they alone, when contradicted by their authors who neither spoke nor read the language in which they were written, are sufficiently robust to clear the more demanding barrier of "reasonable, substantial, and probative" is another matter. We think this feat is beyond them.

In each instance brought to our attention in which statements such as these have been relied upon in a deportation proceeding there has been corroborating circumstances which significantly strengthened the statements. See Medina-Sandoval v. I&NS, 524 F.2d 658 (9th Cir. 1975) (alien corroborated statement at deportation hearing); Martin-Mendoza v. I&NS, supra, (alien corroborated statement at deportation hearing and agent who took statement testified); Trias-Hernandez v. I&NS, 528 F.2d 366 (9th Cir. 1975) (statement not denied by alien and agent who took statement testified although disclaiming any present recollection of statement). No corroborating circumstances exist here. The statements are contradicted by their makers, uncorroborated by the officials who took them, in a tongue foreign to their makers, and unstrengthened by surrounding circumstances other than the demeanor of the witnesses. We are not insensitive to the administrative necessities of the Service, but this is stretching resources too far. To permit such statements standing alone to support deportation is unfair to the alien

whose deportation is sought and creates the opportunity for corrupting abuses within the Service. Surely corroboration of statements such as these before us is not beyond the resources of the Service.

REVERSED.