Apolinar
**HERNANDEZ–GARZA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. 88–4883, 89–4044
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1989.

**946**

David Swaim, Samuel M. Tidwell & Assoc., Dallas, Tex., for petitioner.

Alice M. Smith, Robert L. Bombough, Director, Office of Immigration Litigation, Civ. Div., Washington, D.C. for respondent.

Ronald Chandler, Dist. Director, Dallas, Tex., John B.Z. Caplinger, Dis. Director, I.N.S., New Orleans, La., for other interested persons.

Before POLITZ, KING and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

An immigration judge ordered Apolinar Hernandez–Garza deported pursuant to section 241(a)(13) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(13). The Board of Immigration Appeals (BIA) dismissed Hernandez' appeal. The BIA also found Hernandez ineligible for discretionary relief under section 212(c) of the INA, 8 U.S.C. § 1182(c). For the reasons assigned we grant Hernandez' petition for review of the deportation order, vacate that order, and remand for further proceedings.

### Background

Hernandez, a native and citizen of Mexico, was admitted to the United States as a lawful, permanent resident on January 23, 1975. On January 11, 1980 Hernandez traveled to Mexico. Two days later he was apprehended by the United States Border Patrol near Del Rio, Texas with four Mexican nationals in his car. Hernandez was convicted on a guilty plea of knowingly and unlawfully aiding and abetting one of the smuggled aliens, Arnulfo Rojas–Rubio ("Arnulfo"), to enter the United States in violation of section 275(a) of the INA, 8 U.S.C. § 1325(a)[1] and 8 U.S.C. § 2.[2]

In due course deportation proceedings were commenced pursuant to INA section 241(a)(13), 8 U.S.C. § 1251(a)(13),[3] charging Hernandez with knowingly and for gain assisting an alien, Arnulfo Rojas–Rubio, to enter the United States unlawfully. At a deportation hearing on November 20, 1980 the immigration judge found Hernandez deportable. Eight years later the BIA dismissed Hernandez' appeal.

During the pendency of Hernandez' appeal to the BIA he accrued more than seven consecutive years of lawful domicile. In December 1988 Hernandez moved to reopen the deportation proceeding so that he could apply for discretionary relief from deportation. The BIA denied the motion because Hernandez' status as a lawful per-

---

**1.** 8 U.S.C. § 1325(a) provides in pertinent part: Any alien who ... enters the United States at any time or place other than as designated by immigration officers ... shall, for the first commission of any such offenses, be guilty of a misdemeanor....

**2.** 18 U.S.C. § 2 provides in pertinent part:
Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

**3.** 8 U.S.C. § 1251(a)(13) provides:
Any alien in the United States ... shall, upon the order of the Attorney General, be deported who ... prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law....

manent resident, a requirement for discretionary relief, ceased in October 1988 when the order of deportation became final. Hernandez timely petitioned this court for review of the orders as to his deportability and ineligibility for discretionary relief.

## Analysis

■ In deportation hearings, the Immigration and Naturalization Service (INS) has the burden of proving deportability by "clear, unequivocal, and convincing evidence." *Woodby v. Immigration & Naturalization Service*, 385 U.S. 276, 286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966). *See also*, 8 C.F.R. § 242.14(a). Thereafter judicial review is typically limited to a determination whether the deportation order is supported by reasonable, substantial, and probative evidence on the record considered as a whole, 8 U.S.C. § 1105a(a)(4), and whether the alien was accorded a fair hearing, *Kielema v. Crossman*, 103 F.2d 292 (5th Cir.1939). "To render a hearing unfair, the defect or practice complained of must have been such as might have led to a denial of justice, or there must have been absent an element deemed essential to due process." *Id.* at 293. A due process challenge requires a showing of substantial prejudice to the petitioning alien. *Equan v. United States Immigration & Naturalization Service*, 844 F.2d 276 (5th Cir. 1988); *Ka Fung Chan v. Immigration & Naturalization Service*, 634 F.2d 248 (5th Cir.1981).

At the deportation hearing the INS offered evidence of Hernandez' guilty plea to the charge of aiding and abetting Arnulfo to enter the United States illegally and an affidavit which Hernandez gave to the Border Patrol at the time of his arrest. Although none of the aliens testified, the INS offered affidavits which three of them had given while detained prior to their release into Mexico. In addition, the INS offered the testimony of the two Border Patrol agents who took statements from the aliens.

■ Hernandez correctly concedes that the evidence of his guilty plea to a charge of violating section 275(a) of the INA conclusively established all of the elements of deportability under section 241(a)(13) except for the element of gain. But to establish gain, the INS must prove by clear and convincing evidence that Hernandez received a tangible and substantial financial benefit from Arnulfo which clearly exceeded foreseeable expenses. *Soto–Hernandez v. Immigration & Naturalization Service*, 726 F.2d 1070 (5th Cir.1984). Gain is not an element of the offense proscribed by section 275(a); therefore, Hernandez' plea of guilty to that offense did not establish that he acted for gain in assisting Arnulfo to enter the United States. *Id.* Likewise, Hernandez' admission to the Border Patrol agents that the aliens offered to pay him "an undetermined amount of money" is insufficient to establish the gain element. *Id.*

■ The INS offered the affidavit by Arnulfo wherein he states that Hernandez offered to take him into the United States for $300.[4] That affidavit was written in English, a language that Arnulfo could not read, write, or understand.

The INS sought to buttress the accuracy and reliability of the affidavit with the testimony of agents Kenneth Prescott and Eugenio Rodriguez. The agents testified that Rodriguez asked Arnulfo questions in Spanish, Arnulfo responded in Spanish, and Prescott translated and transcribed the answers into English. Arnulfo signed the English language statement after it was read to him in Spanish. On direct examination agents Prescott and Rodriguez assured the court of their fluency in Spanish.

Hernandez' attorney sought to test the language fluency of agent Prescott by asking him to read a paragraph in Spanish from one of the affidavits. The immigra-

---

**4.** For the reasons discussed *infra,* the BIA should not have considered the *ex parte* affidavit of Arnulfo which the immigration judge had refused to accept into evidence. *Soto–Hernandez,* 726 F.2d at 1071. The BIA correctly de-clined to consider the affidavits of the two other aliens because Hernandez was charged criminally only with aiding and abetting Arnulfo to enter the United States illegally, and the deportation pleading made reference only to Arnulfo.

tion judge summarily prevented that cross-examination as well as similar cross-examination of agent Rodriguez, rhetorically inquiring as to who would qualitate their language fluency. In doing so the immigration judge dismissed counsel's observation that a qualified interpreter was present. In this the judge erred.

An alien is entitled to a reasonable opportunity to cross-examine government witnesses, 8 U.S.C. § 1252(b)(3), particularly with regard to the witnesses' credibility. When agents Rodriguez and Prescott claimed to be fluent in Spanish, that became a matter for close scrutiny. Arnulfo had been questioned in Spanish. His answers had been written in English and then read in Spanish before he signed the affidavit. The language skills of the agents were critical if the judge was to admit and give credence to the contents of Arnulfo's affidavit. Accordingly, the attempt by Hernandez' counsel to test the agents' fluency in Spanish was appropriate and reasonable, and may have been the only meaningful way to measure the testimony used to corroborate Arnulfo's affidavit.

The BIA recognized that the probative value of statements written in a language that the witness can neither read nor speak, absent corroboration, is questionable at best. *Guzman–Guzman v. Immigration & Naturalization Service*, 559 F.2d 1149 (9th Cir.1977). It held, however, that the testimony of the Border Patrol agents provided sufficient corroboration. Considering the critical limitation placed on the cross-examination of the agents, we cannot agree.

The immigration judge declined to admit Arnulfo's affidavit, not because of the agents' language skills but because the INS failed to establish that it had attempted to procure Arnulfo's presence at the deportation hearing. The BIA rejected this ruling and considered the affidavit. The BIA recognized that the use of affidavits from persons who are not available for cross-examination does not satisfy the constitutional test of fundamental fairness unless the INS first establishes that despite reasonable efforts it was unable to secure the presence of the witness at the hearing. *Martin–Mendoza v. INS*, 499 F.2d 918 (9th Cir.1974); *In re De Vera*, 16 I & N Dec. 266 (BIA 1977). The Board held that the INS demonstrated its inability to secure the presence of Arnulfo through the testimony of the INS attorney who stated that letters had been sent to the aliens requesting their attendance at the hearing.

The INS produced a copy of the letter sent to one of the aliens, Mr. Leon–Leon. Hernandez acknowledges that Leon's statement was properly admitted, as the copy of the letter establishes a sufficient effort to secure that witness's presence. But the INS's inability to produce copies of the remaining purported letters is suspect, and under the circumstances we conclude that the showing of unavailability as to those witnesses—including, significantly, Arnulfo—is inadequate.

Denying cross-examination on the agents' fluency in Spanish, and relying on the Arnulfo affidavit as proof of the gain element denied Hernandez a fair hearing, to his obvious prejudice. Without Arnulfo's affidavit the evidence of record falls far short of the required clear and convincing level of proof.

Because of this disposition, we need not address Hernandez' other challenges, and his petition for review of the ruling that he is ineligible for discretionary relief is dismissed without prejudice.

The petition for review is GRANTED, the order of deportation is VACATED and that matter is REMANDED for further proceedings consistent herewith, and the petition for review of the denial of discretionary relief is DISMISSED without prejudice.