United States Court of Appeals,

Fifth Circuit.

No. 92–4157

Summary Calendar.

Dele R. OLABANJI, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Oct. 1, 1992.

Petition for Review of an Order of the Immigration and Naturalization Service.

Before REAVLEY, and DeMOSS, Circuit Judges.*

AVLEY, Circuit Judge:

An immigration judge (IJ) ordered Dele R. Olabanji deported after agreeing with the Immigration and Naturalization Service (INS) that Olabanji married a United States citizen to gain permanent resident immigration status. The Board of Immigration Appeals (BIA) affirmed the IJ's order after ruling that the evidence established that Olabanji did not timely file a proper petition to remove conditional permanent resident status as required by 8 U.S.C.A. § 1186a(c) (West Supp.1992). We grant Olabanji's petition for review, vacate the deportation order against him, and remand this case to afford Olabanji his statutory right to cross-examine INS' witnesses.

I. BACKGROUND

Olabanji is a Nigerian citizen. He entered the United States in 1983 as a nonimmigrant visitor and married Karen D. Raines, a United States citizen, in September 1986. In accord with a July 1988 petition that Raines filed on Olabanji's behalf, INS changed Olabanji's immigration status to "conditional permanent resident" as mandated by 8 U.S.C.A. § 1186a(a)(1) (West Supp.1992).

Congress enacted section 1186a in 1986 to deter people from entering into fraudulent

---

*This case is being decided by a quorum. 28 U.S.C. § 46(d).

marriages to gain residency in the United States. *See* H.R.Rep. No. 906, 99th Cong., 2d Sess. 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5978. Section 1186a facilitates the detection of fraudulent marriages by withholding permanent resident status from immigrants who marry United States citizens unless these couples meet two conditions. First, within the 90 days that precede the second anniversary of the date that the immigrant spouse receives conditional permanent resident status, the couple must file a petition to remove the conditional character of the immigrant spouse's permanent resident status. 8 U.S.C.A. § 1186a(c)(1)(A) (West Supp.1992). This petition must be timely filed, signed by both spouses, and state the following: 1) the couple entered into the marriage in accord with the law of the place of marriage; 2) no judge has annulled or terminated the marriage; 3) the couple did not marry to procure immigration benefits; 4) each spouse's address during the two-year period of conditional permanent residence; and 5) each spouse's place of employment during this period. 8 U.S.C.A. § 1186a(c)(1)(A), (d) (West Supp.1992); 8 C.F.R. § 216.4(a)(1). INS collects this information in its form I–751.

As the second condition imposed by section 1186a, each couple must appear for an interview with an INS official after they file their petition. 8 U.S.C.A. § 1186a(c)(1)(B) (West Supp.1992). The INS official interviews the couple to determine the veracity of the statements that they made in their petition. If the official determines that the statements are true, INS changes the immigrant spouse's status from "conditional permanent resident" to "permanent resident." If the official determines that the statements are false, INS terminates the immigrant spouse's conditional permanent resident status; the immigrant spouse may challenge this determination in deportation proceedings. 8 U.S.C.A. § 1186a(c)(3) (West Supp.1992).

Olabanji timely filed a completed form I–751 in June 1990 that bore his signature and purportedly that of his wife, Raines. The two then timely appeared for their interview with INS officer Linda Seeber on October 2, 1990. At the conclusion of this interview, Seeber terminated Olabanji's conditional permanent resident status and prepared an order for Olabanji to show cause

why he should not be deported.

At Olabanji's deportation hearing in August 1991, Seeber testified that she spoke with Raines outside the presence of anyone else on October 2, 1990. Seeber testified that she drafted an affidavit in Raines' name, based on Raines' statements during this interview, and had Raines review and sign the affidavit. The IJ admitted Raines' affidavit over Olabanji's hearsay objection. The affidavit states that Raines never signed the I–751 form that Olabanji submitted to the INS, that Raines only lived with Olabanji for two months out of their four years of marriage, that she had lived in a separate state from Olabanji for seventeen months and did not hear from him for sixteen of those months, and that Olabanji promised her a divorce if she would come to the interview and answer questions as he suggested.

Seeber testified that she sent either the original or a copy of Olabanji's I–751 form and two of Raines' signature standards to INS' forensic document laboratory. INS offered into evidence a letter from forensic document analyst Claude E. Eaton, dated approximately two weeks before the deportation hearing, stating that the person who signed Raines' name to the I–751 form was not the same person who signed the signature standards. The letter recites Eaton's willingness to testify to this finding at Olabanji's hearing, but INS made no effort to secure Eaton's testimony.

Olabanji testified that his wife signed the I–751, that the information in the I–751 is true, and that he and Raines were trying to resolve their marital difficulties. The IJ found Seeber a credible witness and relied on her testimony, Raines' affidavit, and the forensic lab report to hold that INS "met its burden of proving by a preponderance of the evidence that the marriage was entered into for purpose of procuring [Olabanji's] entry as an immigrant and that he must be deported as a result." The BIA considered no new evidence on appeal and affirmed the IJ's deportation order on an alternative ground: "the preponderance of the evidence demonstrates that [Olabanji's] wife did not sign the form I–751."

II. DISCUSSION

Olabanji argues that the IJ erred in admitting the statements of his wife and INS' forensic document analyst as evidence against him without affording him an opportunity to cross-examine them. The rules of evidence, including those that exclude hearsay, do not govern deportation proceedings. *Bustos–Torres v. I.N.S.,* 898 F.2d 1053, 1055 (5th Cir.1990). But immigration judges must conduct deportation hearings in accord with due process standards of fundamental fairness. *Id.* (citing *Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 1452–53, 89 L.Ed. 2103 (1945)). "Congress has set *by statute* certain standards a fair hearing must include...." *Drobny v. I.N.S.,* 947 F.2d 241, 244 (7th Cir.1991) (emphasis added). Among these requirements is that people in deportation proceedings "shall have a reasonable opportunity ... to cross-examine witnesses presented by the Government." 8 U.S.C.A. § 1252(b)(3) (West Supp.1992); *see also Gonzales v. Zurbrick,* 45 F.2d 934, 937 (6th Cir.1930) ("The right to cross-examine even in deportation proceedings is a constitutional one.").

This court squarely holds that "the use of affidavits from persons who are not available for cross-examination does not satisfy the constitutional test of fundamental fairness unless the INS first establishes that despite reasonable efforts it was unable to secure the presence of the witness at the hearing." *Hernandez–Garza v. I.N.S.,* 882 F.2d 945, 948, (5th Cir.1989) (citations omitted).[1] The

---

[1]We recognize one other exception to the cross-examination right in section 1252(b)(3): people may not assert a cross-examination right to prevent the government from establishing uncontested facts. In *Bustos–Torres,* this court affirmed the BIA's deportation order when the only evidence offered at the deportation hearing was a recorded recollection of an INS official's interview of Bustos–Torres on an INS form which stated that Bustos–Torres is a citizen of Mexico who entered the United States without inspection. 898 F.2d at 1055–56. This court reasoned that where "Bustos does not contest that the [recorded recollection] reflects the [INS] officer's examination, nor did he attempt to impeach the information on the form," and he pleaded the Fifth Amendment rather than answer the IJ's questions concerning the information on the form, the hearsay nature of the form is irrelevant to its admissibility in deportation proceedings. *Id.* at 1056. The court refused to permit Bustos–Torres to assert a cross-examination right when the record contained no indication that this right would have been of any use. *Id.; see also Calderon–Ontiveros v. I.N.S.,* 809 F.2d 1050, 1053 (5th Cir.1986) (IJ fundamentally fair in admitting hearsay report that is cumulative of Calderon–Ontiveros' testimony when Calderon–Ontiveros produced no evidence to refute anything in report). Through his own testimony and his documentary evidence, Olabanji contested both the findings in INS' forensic document analysis and the assertions in the Raines affidavit, so *Bustos–Torres et al.* does not

Ninth and Seventh circuits both follow this rule, and no court has ever disavowed it. *See Cunanan v. I.N.S.,* 856 F.2d 1373, 1375 (9th Cir.1988); *Dallo v. I.N.S.,* 765 F.2d 581, 586 (6th Cir.1985); *Baliza v. I.N.S.,* 709 F.2d 1231, 1234 (9th Cir.1983) ("The purpose of [the cross-examination] guarantee cannot be fulfilled ... if the government's choice whether to produce a witness or to use a hearsay statement is wholly unfettered.").

INS offered no explanation for why it did not present its forensic document analyst for cross-examination at Olabanji's hearing, even though the analyst had offered to testify. Nor does the record reflect any effort on INS' part to afford Olabanji an opportunity to cross-examine Raines. Thus, the IJ ordered Olabanji deported after a fundamentally unfair hearing.

INS argues that Olabanji was not prejudiced by the IJ's admission of Raines' affidavit and the forensic report because Olabanji cross-examined Seeber. We disagree. Seeber had no independent knowledge of the facts alleged in Raines' affidavit and the forensic report. At most she could have testified as to the authenticity of these documents and what happened at the interview on October 2, 1990. Olabanji argues that Raines cannot write and did not understand her affidavit, that Seeber procured her affidavit through coercion, that Raines lied to Seeber, or that some combination of these three resulted in her contradictions of his testimony.[2] Olabanji was only able to cross-examine Seeber as to coercion, and he could have done this more effectively had he been allowed to compare her

undermine his cross-examination right.

[2] Of course, in this case as in *Baliza,* the fact that, absent extremely severe coercion, a man's wife would execute an affidavit that could well cause him to be deported indicates serious problems in their relationship. But the law does not condition permanent resident status on a *harmonious* marriage to a United States citizen. The marriage simply must 1) accord with the law of the state where it took place, 2) continue in legal force through the time that immigrant spouse asks for removal of the conditions from his permanent resident status, and 3) not have been entered into for the purpose of immigration. 8 U.S.C.A. § 1186a(d)(1)(A) (West Supp.1992). Nothing in the record suggests that Olabanji's marriage is illegal, null, or terminated. INS only contends that Raines did not sign the I–751 and that Olabanji and Raines married for immigration purposes. Olabanji admits that he and Raines presently have a strained relationship, but claims that she signed the I–751 and that they married for love. The present animosity between Raines and Olabanji does not render Olabanji's claim impossible, and it explains his need to cross-examine Raines.

version of what transpired in the October 2, 1990 interview with Raines' explanation.

This court considered a virtually identical set of facts in *Hernandez–Garza.* There, INS offered the testimony of two of its officials to corroborate the affidavit of an absent witness and the affidavit itself to establish an element of its case. After holding that INS expended inadequate effort to secure the presence of the affiant, and thus compromised the hearing's fundamental fairness, the court stated: "Without [the] affidavit the evidence of record falls far short of the required clear and convincing level of proof." 882 F.2d at 948; *see also Baliza,* 709 F.2d at 1234 (admission of absent wife's affidavit at deportation hearing requires vacation of deportation order where INS did little to secure wife's presence at hearing "[e]ven if" officer who took affidavit would have testified).

INS next argues that Olabanji knew of his wife's affidavit over a year before the hearing and could have secured her presence at the hearing if he wanted to cross-examine her. But *Hernandez–Garza* squarely places the burden of producing such witnesses on INS when it submits affidavit testimony: "INS [must] first establish[ ] that despite reasonable efforts it was unable to secure the presence of the witness at the hearing." 882 F.2d at 948; *see also Cunanan,* 856 F.2d at 1375 ("the controlling principle in this case [is that] *the government* must make a reasonable effort in INS proceedings to afford the alien a reasonable opportunity to confront the witnesses against him or her") (emphasis added). INS alone decides what evidence it will present to establish deportability, and in doing so it alone must account for its ability to accommodate the cross-examination rights of those whom it seeks to deport. Otherwise, INS' opponents, who, like Olabanji, often appear *pro se* without language skills or experience in American conflict resolution, would be forced to appear prepared to meet any possible evidence that INS decides to present. This requirement is not an unreasonable obstacle when considered in light of the simple means courts have allowed INS to satisfy its burden.[3]

---

[3]*Compare Dallo,* 765 F.2d at 583, 586 (INS service of subpoenas on ex-wife sufficient effort to support admissibility of ex-wife's affidavit) and *Bachelier v. I.N.S.,* 625 F.2d 902, 904 (9th Cir.1980) (sufficient effort where INS offered to move hearing to city where affiant lived, and IJ

## III. CONCLUSION

We GRANT Olabanji's petition for review, VACATE the BIA's decision and order, and REMAND this case to the BIA for further proceedings consistent with this opinion.

---

offered to permit petitioner's attorney to go depose affiant or send written interrogatories) with *Hernandez–Garza,* 882 F.2d at 948 (INS testimony that it sent affiant residing abroad a letter requesting presence at hearing, without production of a copy of the letter, insufficient evidence of effort to provide cross-examination opportunity) and *Baliza,* 709 F.2d at 1234 (investigator's note saying he went to affiant's last address and no one knew of affiant's whereabouts, without investigator's testimony, insufficient evidence of effort when INS should have been aware for a year that it needed to call affiant).