FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL SALVADOR HERNANDEZ-
GUADARRAMA,

*Petitioner,*

v.

JOHN ASHCROFT, Attorney General,

*Respondent.*

No. 03-72084

Agency No.
A75-268-684

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 5, 2004—Seattle, Washington

Filed January 10, 2005

Before: Dorothy W. Nelson, Stephen Reinhardt, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Reinhardt

**COUNSEL**

Matt Adams, Northwest Immigrant Rights Project, Granger, Washington, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division; Richard M. Evans, Assistant Director; and Joan E. Smiley, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

REINHARDT, Circuit Judge:

Daniel Salvador Hernandez-Guadarrama ("Hernandez"), a native and citizen of Mexico and a conditional permanent resident of the United States, petitions for review of a decision by the Board of Immigration Appeals ("BIA"). The BIA affirmed an immigration judge's ("IJ") order finding him removable from the United States for alien smuggling under Section 237(a)(1)(E)(i) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1227(a)(1)(E)(i). We have jurisdiction over his petition pursuant to 8 U.S.C. § 1252, and con-

clude that the government failed to establish removability by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 286 (1966).

## I.

Hernandez is married to a United States citizen and has been a conditional permanent resident since November 17, 1997. On January 25, 1999, Hernandez and his wife were driving back to their home in Sunnyside, Washington after a visit to his mother in Mexico. While crossing Idaho via I-84, the primary route linking the northwestern cities of Salt Lake City, Boise, and Portland, they were stopped by INS Agents Jackson and Sanford, who were conducting anti-smuggling "traffic observations." According to the agents' written report, when the Hernandez's pick-up truck passed the agents' unmarked, stationary vehicle at a speed of 75 mph, no one in the truck made eye contact with the agents and the passengers appeared rigid and nervous. The agents noticed a Hispanic male sitting in the camper shell. Based on their "knowledge" that I-84 is a "notorious route for . . . illegal alien smugglers," they decided to follow Hernandez's truck. While trailing the vehicle, the officers ran the plates and discovered that it was registered to an address in Sunnyside, Washington, a rural community that, according to the officers, is "notorious for the presence of illegal aliens." A customs check revealed that the vehicle had crossed the border two days earlier. After tailing the vehicle for approximately fifteen minutes and noticing additional passengers in the bed of the pick-up in a camper shell, the officers pulled the truck over and questioned the occupants about their citizenship. Upon establishing that seven of the occupants were illegal aliens, the agents took the aliens to a nearby station for processing and ordered Hernandez and his wife to follow them there as well.

At the station, Agents Sanford and Jackson filled out I-213 forms[1] for Hernandez and all the illegal aliens. They also gave

---

[1]An I-213 is the form upon which immigration officers record the biographical information of an apprehended alien and describe the details sur-

*Miranda* warnings to one of the illegal aliens, Columba Landa-Samano, a Mexican national who had previously been deported from the United States, and elicited a sworn statement from her. According to that statement, Hernandez and his wife picked up the seven individuals in their home town in Mexico and drove them to a town near the Mexico-United States border. They dropped the seven passengers off before they reached the border, at which point the passengers made arrangements with a smuggler to cross into the United States. The seven aliens each paid the smuggler $750, and after they crossed the border, the smuggler made arrangements for them to meet up with Hernandez in Phoenix, Arizona. From there, they expected to ride with him to Prosser, Washington.

Agents Sanford and Jackson also interrogated Hernandez's wife and obtained a statement from her regarding the trip back from Mexico. However, according to her subsequent affidavit, the agents lied to her in order to induce her to make the statement, explaining that if she gave the same story as one of the illegal aliens, there would be no immigration consequences for her husband.

The government did not bring criminal charges against Hernandez. Rather, it accused him of violating 8 U.S.C. § 1227(a)(1)(E)(i) and began civil removal proceedings. Under § 1227(a)(1)(E)(i), "Any alien who (prior to the date of entry, at the time of any entry, or within 5 years of the date of any entry) knowingly has encouraged, induced, assisted, abetted or aided any other alien to enter or try to enter the United States in violation of law is deportable."

Before Hernandez's deportation hearing began, he moved to suppress evidence obtained as a result of the stop, alleging that the stop constituted an egregious violation of his Fourth

rounding the alien's arrest. It is entitled "Record of Deportable/Inadmissible Alien."

Amendment rights because race was the motivating factor. According to Hernandez, the other reasons given by the agents to justify the stop were insufficient to establish reasonable suspicion under the law. In addition, he challenged the admissibility of his wife's statement, both because of the agents' alleged prevarication and because, he contended, the arresting officer performed the interrogation in violation of 8 C.F.R. § 287.3.[2] He also asked that the proceedings be terminated. The IJ rejected Hernandez's Fourth Amendment argument and then held that, even assuming that his wife's statement was inadmissible, the government had presented sufficient evidence to proceed with the case.

At the hearing, the two arresting officers testified, but the IJ refused Hernandez's request to cross-examine them regarding the basis for the stop. Columba Landa-Samano did not testify, and the IJ admitted her statement over Hernandez's objection. The IJ asked the government to withdraw Hernandez's wife's statement from consideration in order to avoid unnecessary delay. The government agreed and the IJ stated that he would not consider the statement or any references to it.[3]

In his oral decision, the IJ concluded that the government had demonstrated by clear and convincing evidence that Her-

---

[2]8 C.F.R § 287.3(a) states:

> Examination. An alien arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act will be examined by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her may examine the alien.

Although Hernandez's wife is a citizen, the BIA did not address this point, instead discussing only the regulation's applicability to Hernandez.

[3]Hernandez testified at the hearing but refused to answer questions relating to his arrest and the presence of the aliens in the pick-up truck, claiming the Fifth Amendment privilege against self-incrimination.

nandez aided in the illegal entry of the seven illegal aliens in violation of 8 U.S.C. § 1227(a)(1)(E)(i). He further ruled that, because Hernandez had committed the offense charged, he lacked good moral character and was ineligible for voluntary departure.

One member of the BIA issued an opinion affirming the IJ. According to the BIA, Hernandez's actions fell under 8 U.S.C. § 1237(a)(1)(E)(i) because "he was part of the prearranged plan to bring [the aliens] to the border and part of the prearranged plan to meet them on the other side of the border." Further, the BIA held that Hernandez's due process and Fourth Amendment rights had not been violated.

## II.

On review, Hernandez renews the arguments he made before the BIA: (1) that the IJ erred in refusing to suppress all evidence resulting from the vehicle stop; (2) that the IJ deprived him of his due process rights in limiting his ability to cross-examine witnesses and in admitting statements taken in violation of the agency's own regulations; (3) that, even assuming the government's allegations to be true, § 1227(a)(1)(E)(i) does not apply to him because he was not involved in the illegal aliens' actual border crossing; and (4) that, even if the statute covers more than assistance with the physical border crossing, the government failed to meet its evidentiary burden of demonstrating his culpability by clear, unequivocal, and convincing evidence.

We reject Hernandez's overly narrow construction of § 1227(a)(1)(E)(i) and affirm the BIA's interpretation that the government need not prove direct participation in the physical border crossing. However, the limited evidence upon which the government relies was not subject to cross-examination and is insufficiently reliable to support a decision to remove an alien. We hold that the government failed to prove its case by clear, unequivocal, and convincing evidence. *See Woodby*

*v. INS*, 385 U.S. 276, 286 (1966); *see also, e.g., Cortez-Acosta v. INS*, 234 F.3d 476, 482 (9th Cir. 2000); *Murphy v. INS*, 54 F.3d 605, 612 (9th Cir. 1995). Because we decide the case on that basis, we do not consider Hernandez's Fourth Amendment arguments.[4]

A.   *Construction of 8 U.S.C. § 1227(a)(1)(E)(i)*

The question whether 8 U.S.C. § 1227(a)(1)(E)(i) applies only to those individuals who participate in the physical border-crossing implicates the "agency's construction of the statute [that] it administers." *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). Thus, we apply the principles of deference described in *Chevron*, 467 U.S. at 842. Under *Chevron*, we must first consider "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. "If Congress has done so, the inquiry is at an end; the court 'must give effect to the unambiguously expressed intent of Congress.' " *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 843). If we conclude that the statute is silent or ambiguous with respect to the specific issue before us, we must respect the agency's construction of the statute so long as it is permissible. *Aguirre-Aguirre*, 526 U.S. at 424; *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 448-49 (1987).

**[1]** "The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989). Section 237 of the INA, 8 U.S.C. § 1227(a)(1)(E)(i), states that, "Any alien who . . .

---

[4]We do not understand, however, the rationale for the IJ's refusal to allow Hernandez's counsel to cross-examine the officers about the allegedly unlawful stop. We note that, in a deportation proceeding, evidence that is obtained as a result of an "egregious violation" of the Fourth Amendment must be suppressed. *Gonzales-Rivera v. INS*, 22 F.3d 1441, 1448-49 (9th Cir. 1994). A stop based on race would be such a violation. *Id.* at 1452; *see also Orhorhaghe v. INS*, 38 F.3d 488, 503 (9th Cir. 1994).

knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable." Thus, Hernandez is correct that, unlike its criminal counterpart, INA § 274, 8 U.S.C. § 1324 (a)(1)(A)(i), the civil provision that makes smuggling a deportable offense does not cover mere transportation or harboring of aliens within the United States. However, he is incorrect that the government must demonstrate either that the accused individual actually transported the aliens into the United States or that he personally made the arrangements with the smuggler. The statute's plain language unquestionably applies to a broader array of conduct. An individual may knowingly encourage, induce, assist, abet, or aid with illegal entry, even if he did not personally hire the smuggler and even if he is not present at the point of illegal entry.

**[2]** Our interpretation accords with that of the BIA and other circuits. As the BIA stated in this case, an individual charged with deportability who knowingly participated in a "prearranged plan to bring [illegal aliens] to the border, and . . . to meet them on the other side of the border," falls under the purview of the statute. *See also Sanchez-Marquez v. INS*, 725 F.2d 61, 63 (7th Cir. 1984) (holding that petitioner's promise to transport aliens to and from the border in exchange for compensation constituted assistance with entry in violation of civil smuggling provision); *Matter of Vargas-Banuelos*, 13 I. & N. Dec. 810 (BIA 1971).**[5]**

B. *Sufficiency of Evidence and the Right to Cross-examine*

In order to deport Hernandez, the government must prove

---

**[5]**Hernandez's reliance on *Matter of I.M.*, 7 I. & N. Dec. 389 (BIA 1957) is misplaced. That decision held that mere transportation within the United States is not covered by the civil statute, but left open the possibility that aiding or assisting in entry by means of a prearranged plan is. In *Matter of Romerao*, 22 I. & N. Dec. 486 (BIA 1999), the BIA did not reach the question of the scope of the civil provision.

"by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Gameros-Hernandez v. INS*, 883 F.2d 839, 841 (9th Cir. 1989) (citing *Woodby v. INS*, 385 U.S. 276, 286 (1966)); *see also* 8 U.S.C. § 1229a(c)(3)(A). "Although we review for reasonable, substantial, and probative evidence in the record as a whole," we affirm only if "the [agency] has successfully carried this heavy burden of clear, unequivocal, and convincing evidence." *Cortez-Acosta v. INS*, 234 F.3d 476, 481 (9th Cir. 2000) (per curiam) (internal citations and quotation marks omitted); *see also Nakamoto v. Ashcroft,* 363 F.3d 874, 882 (9th Cir. 2004) (explaining that the court must determine "whether substantial evidence supports a finding by clear and convincing evidence"). "Where, as here, the BIA conducts a *de novo* review and issues its own decision, rather than adopting the IJ's decision as its own, we review the BIA's decision." *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004).

[3] Only three pieces of evidence support the BIA's determination that Hernandez participated in a prearranged plan to transport the aliens to and from the border in violation of 8 U.S.C. § 1227(a)(1)(E)(i): (1) Hernandez's wife's statement, (2) an I-213 with Hernandez's name on it; and (3) Columba Landa-Samano's statement.[6]

---

[6]Contrary to the BIA's opinion, the I-213s for the transported aliens other than Landa-Samano provide no support for the charge. These I-213s simply identify each alien, state that he or she was apprehended in a truck driven by Hernandez, and state that the alien paid an unknown smuggler to cross the border. They in no way indicate that Hernandez helped the aliens enter the United States.

Furthermore, unlike the IJ, the BIA did not state that it drew any adverse inference from Hernandez's decision to invoke his Fifth Amendment right against self-incrimination. Therefore, we do not decide whether such an inference would have been appropriate. *See Iran v. INS*, 656 F.2d 469, 473 n.9 (9th Cir. 1981) (declining to consider whether an adverse inference would be appropriate because the BIA did not rely on such an inference in reaching its decision). We note, however, that because of the

**[4]** The BIA appears to have placed significant weight on the statement given by Hernandez's wife. However, as discussed previously, Hernandez argues that his wife's statement was obtained as a result of the agents' false promises and that her interrogation violated 8 C.F.R. § 287.3. In order to avoid a "lengthy examination" regarding the validity of these allegations, the IJ asked the government to withdraw the statement. The government agreed and the IJ stated that he would not consider it or any references to it. Given the government's representation at the time of the hearing, it cannot now rely upon the statement.[7] Thus, we must disregard it in determining whether the government has met its burden by clear, unequivocal, and convincing evidence.

**[5]** Hernandez's I-213 form also merits no evidentiary weight. Although it states that he helped the aliens enter illegally, the government does not contend that the source of the information on the form was Hernandez. Rather, the I-213

---

differences between the criminal and civil anti-smuggling statutes, Hernandez's decision not to testify does not necessarily warrant an adverse inference regarding deportability. *Cf. United States v. Alderete-Deras*, 743 F.2d 645, 648 (9th Cir. 1984) (alien's refusal to testify in a deportation hearing may form the basis of inferences against him under some circumstances). In order to be criminally prosecuted, Hernandez need only have knowingly transported the illegal aliens *within* the United States, *see* 8 U.S.C. § 1324 (a)(1)(A)(ii), whereas in order for an alien to be deportable under 8 U.S.C. § 1227(a)(1)(E)(i), an action with respect to *entry* is required. Thus, had Hernandez testified that he did not assist with entry but did transport the aliens within the United States, he would have explained why he was not deportable under the civil provision, but would have subjected himself to prosecution under the criminal provision.

[7]Even if the government had not so agreed, the statement might well merit little evidentiary weight in light of the allegations of procedural irregularities and willful misrepresentation by the interrogating officers. *Cf. Laipenieks v. INS*, 750 F.2d 1427, 1435, 1437 (9th Cir. 1985) (holding that the government failed to establish deportability by "clear, convincing and unequivocal evidence" because procedural irregularities "seriously undermine[d] the trustworthiness of the statements made").

merely refers to the sworn statements of Hernandez's wife and of Landa-Samano. In so doing, it provides no additional evidence but simply reiterates the statement provided by Hernandez's wife, which as we have previously explained cannot be considered, and the statement given by Landa-Samano, which we address below.[8] The I-213 is of no independent value and therefore is entitled to no evidentiary weight. *Cf. Murphy v. INS*, 54 F.3d 605, 610-11 (9th Cir. 1995) (holding that an I-213 form merited little if any weight where petitioner disputed the information on the form and the source of the information was in doubt).[9]

**[6]** Without the I-213 and Hernandez's wife's statement, Landa-Samano's statement is the only evidence of Hernandez's role in assisting the aliens by transporting them to the border and picking them up on the other side. However, Hernandez was never afforded the opportunity to cross-examine Landa-Samano.

The INA expressly requires that an alien be granted "a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and *to cross-examine witnesses presented by the Government* . . . ." 8 U.S.C. § 1229a(b)(4)(B) (emphasis added); *see also* 8 C.F.R. § 1240.10(a)(4) (stating that the IJ shall "[a]dvise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her . . . and to cross examine witnesses presented by the government.").[10]

---

[8]Hernandez's I-213 also refers to the agents' written report of the arrest. However, this report again relies only on the same two statements.

[9]By contrast, in *Espinoza v. INS*, 45 F.3d 308, 309 (9th Cir. 1995) we held that an authenticated I-213 form was probative on the issue of illegal entry. However, we specifically noted that the information on an I-213 could not be presumed true when the source of that information was neither a government official nor the subject of the report, or where there was evidence of unreliability. *Id.* at 310.

[10]The only limitation the statute places on that right is that the alien shall not be entitled "to examine such national security information as the Government may proffer . . . ." 8 U.S.C.A. § 1229a(b)(4)(B).

Moreover, the Fifth Amendment's "Due Process Clause applies to all 'persons' within the United States, including aliens," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), and requires that aliens be given a reasonable opportunity to confront and cross-examine witnesses.[11]

**[7]** Although the rules of evidence are not applicable to immigration hearings, *Baliza v. INS*, 709 F.2d 1231, 1233-34 (9th Cir. 1983), the constitutional and statutory guarantees of due process require that " 'the government's choice whether to produce a witness or to use a hearsay statement [not be] wholly unfettered.' " *Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir. 1997) (quoting *Baliza*, 709 F.2d at 1234). As we explained in *Saidane*,

> [t]he test as to whether a hearsay affidavit has been properly admitted is whether the statement is probative and whether its admission was fundamentally fair. Thus, we require that the government must make a reasonable effort in INS proceedings to afford the alien a reasonable opportunity to confront the witnesses against him or her.

129 F.3d at 1065 (internal citations, quotation marks and alterations omitted); *see also Cunanan v. INS*, 856 F.2d 1373, 1375 (9th Cir. 1988). In short, "the INS may not use an affi-

---

[11]*See, e.g., Saidane v. INS*, 129 F.3d 1063, 1066 (9th Cir. 1997) (holding that in a deportation proceeding the government denied petitioner due process when it "did not make a good faith effort to afford the alien a reasonable opportunity to confront and to cross-examine the witness against him"); *Cunanan v. INS,* 856 F.2d 1373, 1375 (9th Cir. 1988) (same); *Baliza v. INS*, 709 F.2d 1231, 1234 (9th Cir. 1983) (same); *see also Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *Akinwande v. Ashcroft*, 380 F.3d 517, 522 (1st Cir. 2004) (holding that no due process violation occurred when immigrant was allowed to cross-examine government witnesses at length).

davit from an absent witness 'unless the INS first establishes that, despite reasonable efforts, it was unable to secure the presence of the witness at the hearing.' " *Ocasio v. Ashcroft*, 375 F.3d 105, 107 (1st Cir. 2004) (quoting *Olabanji v. INS*, 973 F.2d 1232, 1234 (5th Cir. 1992)); *see also Saidane*, 129 F.3d at 1065; *Hernandez-Garza v. INS*, 882 F.2d 945, 948 (5th Cir. 1989); *Dallo v. INS*, 765 F.2d 581, 586 (6th Cir. 1985).

**[8]** In this case, when Hernandez asked to cross-examine Landa-Samano, the IJ initially agreed that cross-examination was necessary. In response, the government explained that it had already deported her. The IJ then shifted the burden of producing Landa-Samano to Hernandez, reasoning that Hernandez was in a better position than the INS to locate her in Mexico, because she was from his hometown. In so doing, the IJ erred: It is clear that "the burden of producing a government's hearsay declarant that [a petitioner] may wish to cross-examine" is on the government, not the petitioner. *Cunanan*, 856 F.2d at 1375; *see also Saidane*, 129 F.3d at 1065-66. The government may not evade its obligation to produce its witness by taking affirmative steps, such as deportation, that render the witness unavailable. Indeed, the government's burden is greater, not lesser, when it exercises custodial power over the witness in question. Because, in this case, the government failed to make any "reasonable effort" to produce the hearsay declarant, and indeed, took action to render her unavailable, the admission of her statement was fundamentally unfair. *See Cunanan*, 856 F.2d at 1375; *see also Saidane*, 129 F.3d at 1065 (holding that minimal effort of an IJ, such as issuing a subpoena to the petitioner to serve on the witness, "cannot suffice to satisfy the government's obligation to make reasonable efforts to produce its witnesses"); *Hernandez-Garza*, 882 F.2d at 948 (holding that the government's efforts to produce adverse witnesses were insufficient where it simply sent a letter to one of the witnesses).

**[9]** Moreover, when Landa-Samano gave her statement to the arresting officers, she was herself at risk of a felony prosecution under 8 U.S.C. § 1326 because she had previously been deported and had reentered the country illegally. Thus she was not, by any means, a disinterested witness. Even if her affidavit were admissible notwithstanding the government's failure to make reasonable efforts to obtain her presence at the hearing, the fact that the inculpatory statements were never subject to cross-examination and the fact that she had a substantial personal interest in providing the testimony she did, true or false, would significantly undermine the affidavit's reliability.[12] Given these circumstances, the affidavit, standing alone, could not constitute sufficient evidence to prove removability under the clear, unequivocal, and convincing standard. *See Murphy*, 54 F.3d at 612; *Hernandez-Garza*, 882 F.2d at 945.

**[10]** As the Supreme Court declared in *Woodby*, the ties that legal residents develop to the American communities in which they live and work, should not be lightly severed:

> This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land

---

[12]Furthermore, Hernandez asserts that Landa-Samano's statement, like his wife's, was taken in violation of the agency's own regulatory requirement that "[a]n alien arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act will be examined by an officer other than the arresting officer." 8 C.F.R § 287.3(a). Although the regulation allows the arresting officer to perform the interrogation when "no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay," Agent Sanford conceded that other officers were available, and the government did not suggest that questioning by another officer would have entailed unnecessary delay. However, we do not base our conclusion regarding Landa-Samano's statement on this ground, at least in part because on the record before us we are unable to make a conclusive determination as to whether a violation occurred.

where he often has no contemporary identification. In words apposite to the question before us, we have spoken of "the solidity of proof that is required for a judgment entailing the consequences of deportation."

*Woodby*, 385 U.S. at 285 (quoting *Rowoldt v. Perfetto*, 355 U.S. 115, 120 (1957)); *see also Gameros-Hernandez*, 883 F.2d at 841. In this case, the government's proof (even if it were admissible) is not sufficient to carry its "very demanding" burden. *See Cortez-Acosta*, 234 F.3d at 481; *see also Murphy*, 54 F.3d at 612; *Hernandez-Garza*, 882 F.2d at 948; *Guzman-Guzman v. INS*, 559 F.2d 1149, 1150 (9th Cir. 1977). A single affidavit from a self-interested witness not subject to cross-examination simply does not rise to the level of clear, unequivocal, and convincing evidence required to prove deportability. We vacate the order of deportation and reverse the BIA's decision.[13]

## VACATED and REVERSED.

---

[13]*See Carbajal-Gonzalez v. INS*, 78 F.3d 194, 201 (5th Cir. 1996) (vacating and reversing because the charges of deportation were not supported by the record); *cf. Ramon-Sepulveda v. INS*, 824 F.2d 749, 750-51 (9th Cir. 1987) (holding that prior decision, which held that the INS failed to prove that petitioner was deportable, was res judicata, and therefore INS was "precluded from seeking to deport petitioner based on matters that were resolved in the earlier deportation proceeding"); *Medina v. INS*, 993 F.2d 499, 503-04 (5th Cir. 1993) (same); *Johnson v. Ashcroft*, 378 F.3d 164, 172 n.10 (2d Cir. 2004) (noting that res judicata applies in immigration proceedings).