**Hany Mahmoud KIARELDEEN, Petitioner,**

v.

**Janet RENO, Attorney General; Immigration and Naturalization Service; Paul Schmidt, Chair, Board of Immigration Appeals; Meissner, Commissioner of the Immigration and Naturalization Service; Andrea Quarantillo, District Director, Newark INS; and Ralph Green, Warden, Hudson County Correctional Center, Respondents.**

No. CIV 99–3925.

United States District Court, D. New Jersey.

Oct. 20, 1999.

---

Regis Fernandez, Newark, NJ, David Cole, Center for Constitutional Rights, Washington, D.C., Nancy Chang Center for Constitutional Rights, New York, NY, Arlington, VA, for Petitioner.

Faith S. Hochberg, United States Attorney, James B. Clark III, Assistant United States Attorney, U.S. Department of Justice, District of New Jersey, Newark, NJ, David W. Ogden, Acting Assistant Attorney General, Michael P. Lindemann, Assis-

tant Director, Douglas E. Ginsburg, Attorney, Office of Immigration Litigation, Civil Litigation, U.S. Department of Justice, Washington, D.C., for Respondents.

## OPINION

WALLS, District Judge.

This matter is before the court on the petition for a writ of habeas corpus brought by Hany Mahmoud Kiareldeen, who, since March 1998, has been in the custody of the Immigration and Naturalization Service (INS) pending the resolution of his removal proceedings. His petition alleges three grounds for release: (1) the petitioner's detention violates the Due Process Clause because it is based on secret evidence that he has not had the opportunity to examine or confront; (2) his continued detention violates his due process rights because the government's evidence consists of uncorroborated hearsay accusations which he has rebutted; and (3) the petitioner must be released from INS custody because the government's evidence concerns his alleged political associations, which are protected by the First Amendment.

The writ is granted on the basis of grounds one and two (Counts I–III of the Petition). Because it is unnecessary to the resolution of this matter, the court does not address the petitioner's First Amendment claim.

### Factual Background

Hany Kiareldeen is a Palestinian who has resided continuously in the United States since 1990, when he entered from Israel on a student visa. In 1994, Kiareldeen married Amal Kamal, with whom he had a daughter. That marriage had ended in a bitter divorce. And in 1997, Kiareldeen married an United States citizen, Carmen Negron, who soon after submitted a relative petition to adjust his status to a conditional legal permanent resident.

In March 1998, INS and FBI agents arrested the petitioner and charged him as deportable for overstaying the time period of his student visa after his completion of his studies. He has been detained without bond pending the outcome of the deportation hearing. Those removal proceedings were between August 1998 and February 1999 before Immigration Judge Daniel Meisner ("IJ"). Kiareldeen conceded that he had overstayed his visa, but sought discretionary adjustment of status and mandatory relief pursuant to the asylum provisions of the INA and the United Nations Convention Against Torture.

In opposition to the petitioner's applications for relief, the INS presented classified evidence *ex parte* and *in camera* to the Immigration Judge which allegedly demonstrated that Kiareldeen was a suspected member of a terrorist organization and a threat to the national security. Throughout the proceedings, the INS never presented any evidence in open court. According to Judge Meisner, the INS did not call a single witness from the FBI's Joint Terrorism Task Force (the "JTTF"), which produced the unclassified documentary evidence that the petitioner has submitted to this court. At the conclusion of the removal hearings, the IJ granted the petitioner a second hearing of his request for redetermination of his continued detention pending the outcome of the removal proceedings.

On April 2, 1999, the IJ issued two opinions: the first granted the petitioner's request for adjustment of status, and the second allowed his release from custody on $1500 bond. That day, the INS appealed the decision to the Board of Immigration Appeals ("BIA"), which stayed execution of the IJ's release order. Kiareldeen moved to dissolve the stay. On June 29, 1999, a panel of BIA judges by a divided 2–1 decision denied his request for release.

Last week, on October 15, 1999, the BIA affirmed the IJ's decision to grant the petitioner permanent resident status. Normally, this decision would moot the habeas petition because the petitioner

would be released from custody upon receipt of his green card. In this case, however, the INS has applied to the BIA for a stay of execution of its order until October 29, 1999, to give the agency time to file a motion to reconsider or to request that the case be referred to the Attorney General for review. Pending the resolution of the INS' application, the petitioner still remains in custody.

The petitioner has never been charged with violation of any criminal laws. And in July 1999, the FBI closed its criminal investigation. The government has disclosed that it does not intend to reopen the investigation unless it receives new information that Kiareldeen is involved in terrorist activity.

*Analysis*

1. *Jurisdiction*

■ At the outset, the court must determine whether it can exercise jurisdiction of petitioner's request for habeas corpus relief. The petitioner contends that although direct review by a district court of his claims is barred by the 1996 amendments to the Immigration and Nationality Act (INA), habeas jurisdiction pursuant to 28 U.S.C. § 2241 is preserved under *Sandoval v. Reno*, 166 F.3d 225 (3rd Cir.1999). There, the Third Circuit addressed the continuing existence *vel non* of habeas corpus jurisdiction in the district courts in light of the jurisdictional revocations contained in two recent federal statutes: the 1996 Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The court reviewed a venerable line of Supreme Court precedents including *Ex parte McCardle*, 7 Wall. 506, 74 U.S. 506, 19 L.Ed. 264 (1868), *Ex parte Yerger*, 8 Wall. 85, 75 U.S. 85, 19 L.Ed. 332 (1868), and *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), and determined that they "es-

tablish the propositions that courts should not lightly presume that a congressional enactment containing general language effects a repeal of a jurisdictional statute, and, consequently, that only a plain statement of congressional intent to remove a particular statutory grant of jurisdiction will suffice." *Id.* at 232. The court then considered a number of provisions of IIRIRA and AEDPA, including INA § 242(g), codified at 8 U.S.C. § 1252(g), which provides:

> Exclusive jurisdiction. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Despite this language, the *Sandoval* court concluded: "As there is no express reference to jurisdiction under 28 U.S.C. § 2241 in this provision, the rule disfavoring implied repeals requires us to conclude that jurisdiction under § 2241 is preserved under the amended INA § 242(g)." *Id.* at 236. Finally, the Circuit noted that its decision avoided the serious constitutional problem which would surface if it were to conclude that IIRIRA revoked habeas jurisdiction as well as review under the Administrative Procedures Act: The Court observed that the Suspension Clause of the Constitution would be violated if statutory provisions such as IIRIRA were construed to preclude all review of executive detention.[1]

The respondents vigorously contest this court's jurisdiction. They rely for support upon *Reno v. American–Arab Anti–Discrimination Committee* (Reno v. AADC), 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), that "the court of appeals is now the exclusive forum for all immigra-

---

1. The Suspension Clause of the United States Constitution states: "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

tion matters." In particular, the respondents point to the characterization in *Reno v. AADC* of INA § 242(b)(9), 8 U.S.C. § 1252(b)(9),[2] as an "unmistakable zipper clause" that says, "no judicial review in deportation cases unless this section provides judicial review." *AADC*, 119 S.Ct. at 943.

Their argument is off target because it asserts that which is not so. *Reno v. AADC* did not reach the issue of the continued existence of habeas jurisdiction after the 1996 amendments. Notably, the Supreme Court decision expressly recognized a Circuit split concerning this issue and declined to resolve it. *AADC*, 119 S.Ct. at 942 n. 7. *AADC* thus cannot be analyzed to address more than the issue of direct judicial review. The respondents mischaracterize its message, inadvertently or otherwise, by claiming that the Court "noted … that 'habeas relief will also be unavailable,'" when the quotation refers to the contentions of the parties, not the Court's. *Id.* at 945.

Next, respondents claim that INA § 236(e), 8 U.S.C. § 1226(e), prohibits this court from reviewing the petitioner's claims.[3] Citing to the Eleventh Circuit case of *Richardson v. Reno* (Richardson II), 180 F.3d 1311 (11th Cir.1999), they contend that the "permanent rule" amendment to the INA of 8 U.S.C. § 1226(e) broadly limits federal court jurisdiction, "regardless of the nature of the proceeding." This argument likewise misses the mark. Although the *Sandoval* court did not address the jurisdictional effects of 8 U.S.C. § 1226(e), which the present parties

agree applies to the petitioner, and reached its decision from the "transitional rules"of IIRIRA and AEDPA, our Circuit's reasoning there applies as well here. Because neither the transitional rules nor the permanent rules expressly refer to 28 U.S.C. § 2241, this court does not find that 8 U.S.C. § 1226(e) repeals habeas corpus jurisdiction by implication.

This court accompanies other courts of this circuit in their determination that district courts retain habeas corpus jurisdiction consonant with the 1996 amendments. *See, e.g., Velasquez v. Reno*, 37 F.Supp.2d 663 (D.N.J.1999) (relying on *Sandoval* rationale, holding that habeas jurisdiction not repealed by implication by 8 U.S.C. § 1226(e)); *see also Grant v. Zemski*, 54 F.Supp.2d 437 (E.D.Pa.1999) (same); *Hypolite v. Blackman*, 1999 WL 499146 (M.D.Pa. July 13, 1999) (finding that habeas jurisdiction preserved after amendment to 8 U.S.C. § 1252(g); concluding after review of recent Circuit decisions that *Reno v. AADC* "has no impact on Sandoval"); *cf. Edwards v. Blackman*, 1999 WL 540213 (M.D.Pa. July 22, 1999) (determining that "[s]ince the holding and rationale of [AADC] are contrary to Sandoval, we adhere to the Supreme Court's view"; finding that Suspension Clause not implicated unless the Supreme Court itself is stripped of habeas jurisdiction). Most courts have addressed this issue to examine claims brought by petitioners subject to INA § 236(c), 8 U.S.C. § 1226(c), which requires the Attorney General to detain aliens who have committed certain enumerated criminal offenses. However, this

**2.** 8 U.S.C. § 1252(b)(9) states: "Consolidation of questions for judicial review. Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding to remove an alien from the United States under this subchapter shall be available only in a judicial review of a final order under this section." In turn, 8 U.S.C. § 1252(d) states that a court may review a final order of removal only after the alien has exhausted all available administrative remedies, and 8 U.S.C. § 1252(b)(2)

provides that such judicial review shall be venued only in the Court of Appeals.

**3.** 8 U.S.C. 1226(e) provides: "Judicial review. The Attorney General's discretionary judgment regarding the application of this section [governing the arrest and detention of aliens pending removal proceedings] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

court finds that the historical objective of habeas jurisdiction, to provide a last resort for prisoners to challenge the constitutionality of their detention, also applies with compelling force in these circumstances. After *Reno v. AADC,* the Third Circuit in *Catney v. INS,* 178 F.3d 190 (3rd Cir. 1999), explicitly reaffirmed that both statutory and constitutional challenges to detention may still be made by a habeas petition. *Id.* at 194. Pursuant to *Sandoval* and *Catney,* this court concludes that jurisdiction of the petitioner's request for habeas corpus relief is proper.

## 2. *Exhaustion of Administrative Remedies*

The respondents had contended that even if the court could otherwise take jurisdiction, the petition should be dismissed because Kiareldeen failed to exhaust his administrative remedies. The petitioner answered that he had sought every available administrative remedy, and had no avenue for relief other than this court.

On October 15, 1999, the BIA issued its final decision, which dismissed the INS' appeal and granted the petitioner's application for adjustment of status. The petitioner has now exhausted all administrative remedies; the respondents' argument is moot.

## 3. *Secret Evidence*

The petitioner argues that the INS' use of secret evidence at his bond redetermination hearing before the Immigration Judge, not authorized by statute or regulation, was *ultra vires.* Furthermore, he asserts that even if the INS' actions were properly authorized, the government's reliance on evidence presented *ex parte* and *in camera* to support his detention violated his due process rights under the Fifth Amendment.

To support his claim that the Service's actions were *ultra vires,* the petitioner points the court to a provision in the Immigration and Nationality Act that countenances the use of confidential information:

Subchapter V of the INA establishes special procedures that govern the treatment of purported "alien terrorists." 8 U.S.C. §§ 1531 *et seq.* Pursuant to that subchapter, the INS is authorized to present to immigration judges, *in camera* and *ex parte,* "any evidence for which the Attorney General determines that public disclosure would pose a risk to the national security of the United States or to the security of any individual because it would disclose classified information." 8 U.S.C. § 1534(e)(3)(A); *see also* 8 U.S.C. § 1536(a)(2)(B). By negative implication, the petitioner argues that Congress' failure to expressly provide for the use of confidential information in custody hearings must be interpreted as an expression of congressional intent to limit such evidence to the specialized forum of the alien terrorist removal court. The petitioner admits that the regulations governing bond hearings permit an Immigration Judge to base his or her decision upon "any information that is available to the Immigration Judge or that is presented to him or her by the alien or by the Service." 8 C.F.R. § 3.19(d) (1988). However, he asks the court to construe this language to not permit the use of undisclosed evidence. He argues: "[8 C.F.R. § 3.19(d)] describes only the substantive scope of information that may be considered; it says nothing about the *procedures* by which any evidence should be considered, and does not authorize either party to present information *ex parte* or *in camera.*" Pet. Memorandum in Suppt. of Habeas Petition at 9, n. 5.

■ The respondents attempt to undermine this argument by reference to INA § 240(b)(4)(B), 8 U.S.C. § 1229a(b)(4)(B), located in the section that governs removal proceedings, which reads:

Aliens [sic] rights in proceeding. In proceedings under this section, under regulations of the Attorney General ... the alien shall have a reasonable opportunity to examine the evidence against

the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the government but these rights shall not entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's admission to the United States *or to an application by the alien for discretionary relief under this chapter.* (Emphasis added.) [4]

It is difficult to dispute that the grant or denial of release on bond falls squarely within the discretion of the Attorney General. *See, e.g., Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); 8 U.S.C. § 1226; *cf. National Center for Immigrants' Rights, Inc. v. INS,* 913 F.2d 1350 (9th Cir.1990), *overruled by INS v. National Center for Immigrants' Rights, Inc.,* 502 U.S. 183, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991).

Nonetheless, the petitioner claims that 8 U.S.C. § 1229a(b)(4)(B) and 8 C.F.R. § 240.10(a)(4) do not govern the use of secret evidence in bond hearings. The petitioner claims that, because these proceedings are traditionally considered separate, independent stages of the deportation process, the language of the removal statute 8 U.S.C. § 1229a(b)(4)(B) does not authorize the INS' proffer of secret evidence at Kiareldeen's bond redetermination hearings. *See, e.g.,* 8 C.F.R. § 3.19(d) (1998) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under [8 U.S.C. § 1226] shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."); *Gornicka v. INS,* 681 F.2d 501, 505 (7th Cir.1982) ("[I]t is clear bond hearings are separate and apart from deporta-

tion hearings. The considerations taken into account in a bond hearing do not form part of the record in the deportation proceeding. Whether or not bond is required has no bearing on whether a final order of deportation will be entered. A bond determination is not a final order of deportation, is not made during an administrative proceeding under section 1252(b) [governing removal proceedings], and does not effect [sic] the deportation proceeding."); *Matter of Chirinos,* 16 I & N Dec. 276, 277 (BIA 1977) ("[T]he requirement of a separate bond procedure and record is part of the effort to divorce, so far as possible, the bond matter from the deportation hearing.")

█ Because it is not necessary for the resolution of this matter, the court need not define the scope of INA § 240(b)(4)(B), 8 U.S.C. § 1229a(b)(4)(B). Instead, the court will assume that the INS' use of secret evidence, both at the petitioner's bond hearing and throughout the removal proceedings, was authorized by this statutory provision and the corresponding regulation. The petitioner's due process claims are treated as challenges to the validity of the statute and regulation as they were applied to his case. Also, because it is clear that the petitioner is not mounting a facial challenge to the statute, but instead questions the constitutionality of its application to his case, the court expresses no comment on the overall validity of 8 U.S.C. § 1229a(b)(4)(B).

At the threshold, the court notes that several of the decisions relied on by the respondents to demonstrate that secret evidence passes constitutional muster provide no support. *United States ex rel.*

---

**4.** The INS regulations which dictate the procedural and evidentiary requirements of removal proceedings, found at 8 C.F.R. § 240.10(a)(4) (1998), say: "In a removal proceeding, the immigration judge shall ... advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the government (but the respondent shall not be entitled to examine such national security information as the government may proffer in opposition to the respondent's admission to the United States *or to an application by the respondent for discretionary relief).*" (Emphasis added.)

*Knauff v. Shaughnessy*, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1950), and *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), address the due process implications of secret evidence used to exclude nonresident aliens who seek admission to the country. *See also Adams v. Baker*, 909 F.2d 643 (1st Cir.1990) (because the power to exclude nonresident aliens is a "fundamental sovereign attribute," finding that consular decision to deny nonimmigrant visa to Gerry Adams, President of Sinn Fein, on the basis of hearsay evidence derived from newspapers and reports is subject to extremely limited judicial review).

There is no doubt that the legislative and executive branches have plenary power to exclude nonresident aliens from the United States. *See, e.g., Chae Chan Ping v. United States* (The Chinese Exclusion Case), 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889) (upholding the validity of the Chinese Exclusion Act of 1888, which prevented Chinese laborers from returning to work in the United States, reasoning: "That the government of the United States ... can exclude aliens from its territory is a proposition which we do not think open to controversy. Jurisdiction over its own territory to that extent is an incident of every independent nation.... If it could not exclude aliens it would be to that extent subject to the control of another power."); *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 209, 73 S.Ct. 625, 97 L.Ed. 956 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") Moreover, such exclusion may employ one-sided procedures and be based on discriminatory distinctions offensive to the Constitution if applied to citizens or resident aliens. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). Precisely because Congressional power over

alien exclusion is so broad, the respondents' reliance on exclusion cases such as *Knauff* and *Mezei* is somewhat disingenuous. The limited judicial inquiry undertaken in alien exclusion cases stands in marked contrast to the searching scrutiny required of governmental actions taken against resident aliens such as Kiareldeen, which are clearly circumscribed by the bounds of the Constitution. *See, e.g., Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–97, 73 S.Ct. 472, 97 L.Ed. 576 (1953) (holding that because resident aliens are guaranteed due process rights by the Fifth Amendment, INS procedures applied to permanent residents must meet a higher standard than government actions taken to exclude nonresidents).

■ The respondents contend that even if the petitioner is entitled to constitutional protections, he "forfeited" his due process rights by "conceding deportability." They assert that, because the petitioner conceded that he overstayed his student visa, he has no more due process rights than an excludable alien. This argument ignores the axiomatic, constitutional premise that aliens, once legally admitted into the United States, are entitled to the shelter of the Constitution. *See, e.g., Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Landon v. Plasencia*, 459 U.S. 21, 31, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application ... however, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.")

The cases advanced by the respondents are of no analytical help because the petitioner is not subject to a final deportation order. *See Zadvydas v. Underdown*, 185 F.3d 279, 283 (5th Cir.1999) (limited due process rights where alien conceded deportability, Immigration Judge denied re-

lief from deportation and issued order of deportation, and alien did not appeal decision); *Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1449 (9th Cir.1995) (Cuban found excludable, denied admission, and ordered deported, has no procedural due process rights regarding his admission or exclusion); *Wolf v. Boyd,* 238 F.2d 249 (9th Cir.1956) (affirming BIA denial of petition to reopen deportation proceedings of alien subject to final deportation order). Although Kiareldeen conceded that he had overstayed his student visa, he did not concede deportability. In reality, at his removal hearings, Kiareldeen applied for several forms of relief from deportation, including discretionary adjustment of status, and mandatory relief under the asylum provisions of the INA and the United Nations Convention Against Torture. Moreover, the IJ granted the petitioner's application for discretionary adjustment of status pursuant to INA § 245(a), 8 U.S.C. § 1255(a); and this decision was recently affirmed by the BIA.

Under these circumstances, it is clear to this court that the petitioner cannot *now* be "assimilated" to the status of an excludable alien. *Cf. Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999) (where alien conceded that he had committed criminal offense warranting deportation, immigration judge ordered removal, and petitioner's motion papers did "not even hint at a substantive argument that he is entitled to remain in the United States," alien had forfeit his legal entitlement to remain in the country; applying *Mathews v. Eldridge* balancing test to determine constitutionality of mandatory detention provision of INA).

This court likewise rejects the respondents' assertion that the petitioner "holds the keys to his cell," and that his continued detention is the result of his own actions to delay the removal process. Given the procedural history of this case, the court finds

this argument meritless. The petitioner's applications for discretionary and mandatory relief from removal cannot reasonably be characterized as delaying tactics. The decisions of the IJ and of the BIA in October 1999 demonstrate that Kiareldeen's applications for relief had merit. But for the emergency stay by the BIA of Judge Meisner's release order, the petitioner would have been freed on bond in April 1999. The petitioner is entitled to the full due process of law.

With this in mind, the court turns to the merits of the constitutional issues present. The essence of the petitioner's constitutional claim is that the INS' reliance on evidence never disclosed to the petitioner violated "every tenet of due process." The petitioner claims that the government's use of secret evidence denied him meaningful notice of the charges against him, rendered illusory any opportunity to defend himself, and carried with it a high risk of error.

The government relies principally on two decisions that the use of secret evidence in immigration proceedings raises no constitutional concerns: first, *Jay v. Boyd,* 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), where the Supreme Court considered a habeas corpus petition brought by a resident alien whose application for suspension of deportation had been denied by the Board of Immigration Appeals. There, as here, a regulation promulgated by the Attorney General expressly authorized the use of confidential information where the disclosure of such information would be "prejudicial to the public interest, safety, or security." In a sharply divided decision, Justice Reed, writing for the majority, found the regulation to be consistent with the plain meaning of the INA provision, and affirmed the INS' reliance on confidential information to deny the petitioner relief.[5] *Id.* at 357–61, 76 S.Ct. 919.

5. The *Jay* majority never described the information that had been proffered by the government in opposition to the petitioner's application.

tion. However, in his habeas petition, Cecil Jay alleged that, "upon information and belief," the government had relied on nothing

That case does not further the government's argument for a simple reason: the petitioner there did not raise a constitutional challenge to the statute or the regulation, the *Jay* decision answers a question of statutory interpretation. *Id.* at 357, 76 S.Ct. 919. Although the Court remarked, by a footnote, that "the constitutionality of s 244 [of the INA] as herein interpreted gives us no difficulty," Justice Reed recognized that the petitioner had requested only a favorable construction of the applicable statutory and regulatory provisions. *Id.* at 358 n. 21, 76 S.Ct. 919. In short, the *Jay* Court did not reach the constitutional question presented by Kiareldeen today.

The government next relies on *United States ex rel. Barbour v. District Director,* 491 F.2d 573 (5th Cir.1974), where a permanent resident sought discretionary bail release pending final decision in his deportation proceedings. The BIA denied his application because of evidence submitted *ex parte* by the State Department to the INS. In its review, the Fifth Circuit applied a deferential standard because of the discretionary nature of the relief sought, and affirmed the BIA's determination. *Id.* at 574–77. The Court noted Barbour's claim that his due process rights had been violated by the government's reliance on confidential information, but responded tersely: "We reject these contentions." The Court reasoned that under *Jay,* the INS could deny discretionary relief on the basis of confidential information where, as in the case before it, the process was sanctioned by regulations. *Id.* at 578.

This court observes that the *Barbour* case was decided before *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), where the Supreme Court defined present standards of procedural due process analysis. The *Barbour* Court limited its review to the BIA's de-

termination in that case and did not address the overall fairness of the process authorized by the INS regulations. *Cf. Bridges v. Wixon,* 326 U.S. 135, 156, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) (recognizing that courts must exercise restraint in reviewing individual decisions of the INS, but that challenges to overall fairness are amenable to judicial review). Because of the Supreme Court's message in *Mathews,* this court does not consider the *Barbour* approach to be appropriate now.

Instead, the court finds guidance from several recent decisions which have considered the constitutional implications of the use of confidential information in immigration proceedings. In *Rafeedie v. INS,* 688 F.Supp. 729 (D.D.C.1988), the District Court addressed the INS' use of a special summary proceeding to exclude a permanent resident from re-entry into the United States. The underlying statute authorized the Attorney General to rely upon confidential information and to issue an order of exclusion and deportation without giving the alien an opportunity to cross-examine witnesses, to consider the government's evidence, or to appeal the decision. *Id.* at 736. The INS had invoked the summary procedure because of allegations (vehemently contested) that the resident alien was a high-ranking member of a purportedly terrorist organization, the Popular Front for the Liberation of Palestine ("PFLP"). Because the circumscribed process provided no opportunity to the resident alien to confront the INS or the evidence against him directly, the District Court granted him a preliminary injunction that barred the government from employing the summary proceeding.

On appeal, the District of Columbia Circuit Court affirmed the preliminary injunction, held that "[t]here can be no doubt

---

more than the fact that Jay's name had appeared on a list circulated by American Committee for the Protection of the Foreign Born, an organization which had been deemed subversive by the Attorney General. *Jay,* 351 U.S. at 350 n. 6, 76 S.Ct. 919. In his dissent,

Justice Black asserted that Jay was "banished because he was a member of the Communist Party from 1935 to 1940," which was not illegal during the period of his alleged participation. *Id.* at 362, 76 S.Ct. 919 (Black, J., dissenting).

that, as a permanent resident alien, Rafeedie has a liberty interest in remaining in the United States, which is protected by the Due Process Clause of the Fifth Amendment," and remanded the case to the District Court for further exploration of the due process issues. *Rafeedie,* 880 F.2d 506, 524 (D.C.Cir.1989). That Circuit Court noted that Rafeedie, like Joseph K. in Kafka's allegory *The Trial,* was in the untenable position of being forced to prove that he was not a terrorist in face of the Government's confidential information: "It is difficult to imagine how even someone innocent of all wrongdoing could meet such a burden." *Id.* at 516.

On remand, the District Court ruled that because the plaintiff had been given only one opportunity to argue his case, and because that sole opportunity had been "exercised in ignorance of the confidential information with which he [had] been charged," the summary proceedings in his case did not satisfy the "basic and fundamental standard" of due process. *Rafeedie,* 795 F.Supp. 13, 20 (D.D.C.1992).

The Ninth Circuit joined in this conclusion in *American–Arab Anti-Discrimination Committee v. Reno,* 70 F.3d 1045 (9th Cir.1995)[6]. Two permanent resident aliens applied for adjustment of their status pursuant to a provision of the INA which the INS claimed authorized the use of secret evidence in legalization proceedings. The INS had earlier arrested the immigrants, charged them with membership in the allegedly communist PFLP, and denied the applications on the basis of undisclosed classified information. *Id.* at 1054. After examination of the government's evidence, the District Court had found that the government's reliance on the information would constitute a due process violation and granted the plaintiffs

a permanent injunction against its use. *Id.*

The Ninth Circuit affirmed. Applying the constitutional balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court weighed the following factors in regard to the INS' use of secret evidence: (1) the private interest affected; (2) the risk of erroneous deprivation of the interest and the value of additional or alternative procedural safeguards; and (3) the government's interest in utilizing the procedure.

The appellate court found that after ten years' residence in the United States, the immigrants had a strong liberty interest in remaining in their homes and at their work, even though they had committed technical visa violations. *Id.* at 1068–69. Next, the Court discussed the "immutable principle" that the government's evidence must be disclosed in adversary proceedings so that individuals have an opportunity to disprove the government's case against them. *Id.* at 1069 (quoting *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). The Court determined that because secret procedures deprive individuals of their rights of confrontation and cross-examination, the use of undisclosed information presented an "exceptionally high risk of erroneous deprivation." Finally, the Court recognized the legitimate governmental interest in removing persons deemed to be threats to the national security while protecting its confidential sources. However, it determined that the government's failure to produce evidence that the targeted individuals had personally advocated prohibited doctrines or participated in terrorist activities belied its claim that they constituted a national security threat. *Id.* at 1070–71. Because the government was free to institute de-

---

**6.** The Ninth Circuit again considered the petitioners' claims in the later decision of *American–Arab Anti-Discrimination Committee v. Reno,* 119 F.3d 1367 (9th Cir.1997), which jurisdictional analysis and treatment of selective prosecution claims were reversed by the Supreme Court in *Reno v. American–Arab*

*Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). Because the Supreme Court decision did not discuss or mention the secret evidence claims, it does not impact the 1995 Ninth Circuit's *Mathews* analysis here discussed.

portation proceedings or deny immigration benefits on the basis of non-secret evidence, the claimed governmental interest in choosing not to reveal its sources was outweighed. The Court concluded: "Because of the danger of injustice when decisions lack the procedural safeguards that form the core of constitutional due process, the *Mathews* balancing suggests that use of undisclosed information in adjudications should be presumptively unconstitutional. Only the most extraordinary circumstances could support onesided process."

This court does not ignore the warnings of *Rafeedie* and *AADC*. Minimally, these cases teach that the INS' reliance on secret evidence raises serious issues about the integrity of the adversarial process, the impossibility of self-defense against undisclosed charges, and the reliability of government processes initiated and prosecuted in darkness.

Review of the Service's procedures involving Kiareldeen leads the court to believe that the petitioner's case is an example of the dangers of secret evidence. The petitioner came to the United States to attend a language program at Rutgers University, and continued his studies until he married for the first time and no longer could afford to work. He has supported himself and his family by working at a pizzeria and an electronics store in New Jersey. He has lived in the United States for almost a decade, married an American citizen, and applied to become a permanent resident. In March 1998, INS and FBI agents arrested the petitioner without warning and placed him in indefinite detention. Kiareldeen has presented evidence on his own behalf at two separate bond hearings and a removal proceeding that spanned seven months. He has subpoenaed the only government witness that he is able to identify: his ex-wife Amal Kamal, whom he suspects may be the source of the accusations against him. The Immigration Judge who presided over his removal proceedings and second bond hearing determined that "[a]n

evaluation of the evidence by a person of ordinary prudence and caution cannot sustain a finding that this respondent has engaged in terrorist activity" and ordered his release from custody, but the INS immediately received from the Board of Immigration Appeals an emergency stay of execution of the release order. Nearly two years after his arrest, despite persistent efforts of counsel, the petitioner has remained in the limbo of detention.

The unclassified evidence that the government made available to the petitioner to support these extraordinary measures consists of five separate "summaries" of information gathered by the FBI's Joint Terrorism Task Force, which the agency assures was "obtained from multiple reliable sources who have provided reliable information in the past." *See* Habeas Petition, Exhibits A–E. The most detailed of these identifies not a single source and is barely over two pages.

■ To assay the constitutionality of the INS procedures applied to the petitioner, the court considers the three factors enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The first, the petitioner's private interest in his physical liberty, must be accorded the utmost weight. Kiareldeen has been removed from his community, his home, and his family, and has been denied rights that "[rank] high among the interests of the individual." *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). The second, the risk of erroneous deprivation, also militates in the petitioner's favor. Use of secret evidence creates a one-sided process by which the protections of our adversarial system are rendered impotent. The petitioner has been compelled by the government to attempt to prove the negative in the face of anonymous "slurs of unseen and unsworn informers." *Jay*, 351 U.S. at 365, 76 S.Ct. 919 (Warren, J., dissenting). As the District Court wrote in the *AADC* case, "[o]ne would be hard pressed to design a procedure more likely to result in erroneous

deprivations." *Quoted in AADC v. Reno,* 70 F.3d at 1069.

Finally, the court considers the government's interest in relying on secret evidence. Even if the interest is deemed to be the unarguably weighty one of national security, as the government maintains, the court must inquire "whether that interest is so all-encompassing that it requires that [the petitioner] be denied virtually every fundamental feature of due process." *Rafeedie,* 795 F.Supp. at 19.

The court does not, however, necessarily accept at face value the government's contentions that the national security is implicated by the petitioner's alleged misdeeds. The court has considered the government's unclassified "summary" evidence and finds it lacking in either detail or attribution to reliable sources which would shore up its credibility. More important, however, is the apparent conclusion that even the government does not find its own allegations sufficiently serious to commence criminal proceedings. The petitioner asserts, unchallenged, that the FBI recently closed its criminal investigation of Kiareldeen, and does not intend to reopen the investigation unless it receives new information that he is involved in terrorist activity. *See* Pet. Supp. Memorandum in Suppt. of Habeas Petition at 3. Under these circumstances, the government's claimed interest in detaining the petitioner cannot be said to outweigh the petitioner's interest in returning to freedom.

Here, the government's reliance on secret evidence violates the due process protections that the Constitution directs must be extended to all persons within the United States, citizens and resident aliens alike. The INS procedures patently failed the *Mathews* test of constitutional sufficiency. And the court finds this failure to be sufficient basis to grant the petitioner's writ of habeas corpus and direct his release from custody.

That said, an observation. During the bond hearings and the removal proceedings, the Service repeatedly charged that the petitioner had submitted a fraudulent birth certificate with his application, and that his requests for relief should be denied because of this misrepresentation. The petitioner describes this issue as a "classic red herring" and claims that he submitted to the INS a copy of his actual birth certificate in Arabic, together with a translation that had been copied from a translation of his brother's certificate. The court need not resolve this authenticity issue, because it is readily apparent that the BIA's decision to continue the petitioner's detention was based in large part on confidential information offered by the government. Because the court is unable to presume that the BIA's decision would have been the same in absence of the secret evidence, *see Bridges v. Wixon,* 326 U.S. 135, 155, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), the petitioner must be released.

### 4. The Quality of the INS Evidence and Petitioner's Due Process Right to Confront His Accusers

█ The petitioner claims that the decision of the BIA to detain him, without the right to bond, primarily on the basis of an uncorroborated hearsay document violates his Fifth Amendment right to procedural due process. Kiareldeen asserts that the allegedly poor quality of the evidence presented by the INS raises a due process claim because it denied a meaningful opportunity to him to cross-examine his accusers. This constitutional claim raises due process issues of the reliability of the government's evidence separate from the concerns inherent in the use of *in camera, ex parte* procedures. The petitioner alleges: "To detain an individual on the weight of a single, unsworn, unsigned, and uncorroborated hearsay document of this character under these circumstances violates due process, even if the evidence had been submitted in open court."

█ The respondents correctly counter that the Federal Rules of Evidence do not apply in administrative immigration pro-

ceedings. *See, e.g., Cunanan v. INS,* 856 F.2d 1373, 1374 (9th Cir.1988); *Felzcerek v. INS,* 75 F.3d 112, 116 (2nd Cir.1996). They further argue that because of the high stakes involved, hearsay evidence which is less than fully reliable may form the basis of a decision to detain, when alleged national security issues are involved.

The petitioner advances *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), that detention based on unreliable hearsay evidence raises due process concerns because it frustrates the right to confront one's accusers. The *Bridges* Court found that the INS had violated its own regulations by basing a deportation order on unsigned, unsworn hearsay allegations that the detained alien was active in the Communist Party. *Id.* at 150–151, 65 S.Ct. 1443. The Court noted that the applicable INS regulations prohibited the admission of hearsay statements as substantive evidence except in very limited circumstances, and cautioned: "Meticulous care must be exercised lest the procedure by which [the detainee] is deprived of [his] liberty not meet the essential standards of fairness." *Id.* at 154, 65 S.Ct. 1443.

The respondents attempt to distinguish *Bridges* from the present circumstances, arguing that because *Bridges* addressed the evidentiary requirements for establishing deportability, the holding does not encompass situations where the detainee seeks a discretionary benefit such as release on bond under INA § 236. This argument is incorrect. *See, e.g., Cunanan,* 856 F.2d at 1374 (finding that BIA denial of application for discretionary relief of voluntary departure violated due process where decision was based on hearsay affidavit and "Record of Deportable Alien" by declarants who were not available for cross-examination). The decision of the BIA to maintain Kiareldeen's detention falls squarely within the directions of *Bridges.*

Recently, various Circuit Courts have considered the use of hearsay evidence in immigration cases, where the government typically attempts to proffer affidavits in lieu of live testimony. These decisions have fashioned the contours of the due process interest of *Bridges.* And they uniformly hold that, *for due process purposes,* the admissibility of hearsay evidence is determined by whether it is both probative and "fundamentally fair." *See, e.g., Felzcerek v. INS,* 75 F.3d at 115 (2nd Cir. 1996); *Baliza v. INS,* 709 F.2d 1231, 1234 (9th Cir.1983); *Cunanan,* 856 F.2d 1373, 1374; *Olabanji v. INS,* 973 F.2d 1232, 1234 (5th Cir.1992).

The recent Circuit Court decisions also require that the government acknowledge the detainee's right to cross-examine his or her accusers. The constitutionality of reliance on hearsay evidence thus turns on whether the government has made a reasonable effort to produce its witnesses for cross-examination. *See Cunanan,* 856 F.2d at 1375; *Saidane v. INS,* 129 F.3d 1063, 1065 (9th Cir.1997); *Olabanji,* 973 F.2d at 1236. At one end of the spectrum, courts have admitted hearsay evidence when the government demonstrates repeated, diligent, but unsuccessful attempts to locate its witnesses. *See, e.g., Dallo v. INS,* 765 F.2d 581 (6th Cir.1985) (approving BIA reliance on affidavit of immigrant's ex-wife where INS subpoenaed affiant three times and sent investigator to affiant's parents' home, and where immigration judge personally telephoned affiant's home). At the other end, courts have prohibited the use of hearsay evidence when the government makes no showing of efforts to produce its witnesses or when the government's purported attempts are evidently half-hearted. *See, e.g., Baliza,* 709 F.2d at 1234 (finding "troubling" due process violation when government made no effort to locate witness before deportation hearing, despite government's submission of unsigned note by investigator stating that he could not locate affiant at her last known address); *Hernandez–Garza v. INS,* 882 F.2d 945 (5th Cir.1989) (prohibiting reliance on affidavit of Spanish speaker

that was taken in English by INS agents, where immigration judge prohibited cross-examination of agents regarding their fluency in Spanish); *Saidane*, 129 F.3d at 1065–66 (barring use of hearsay affidavit when the INS improperly attempted to shift the burden to produce witness onto alien, and where INS attorney told immigration judge that "I have not seen fit to use [affiant] as a witness because I don't think it is material to the issues now raised in this case.")

These cases declare that due process concerns are not satisfied unless the government provides the detainee with an opportunity to cross-examine the affiant, or at the minimum, submits a sworn statement by a witness who can address the reliability of the evidence. The Fifth Circuit's *Olabanji* decision thus ruled that the government could not constitutionally rely on the testimony of an INS officer who had drafted an affidavit of the immigrant's ex-wife, because the affiant herself was not produced for cross-examination. *Olabanji*, 973 F.2d at 1234; *cf. Bustos–Torres v. INS*, 898 F.2d 1053, 1056 (5th Cir.1990) (accepting standardized form where government submitted affidavit of authentication from examining officer, where form was based on uncontested admissions of immigrant).

■ A court determining the reliability of hearsay evidence must consider whether the hearsay allegations have been corroborated by other government evidence, and whether the immigrant has produced evidence that rebuts the government's allegations. *See, e.g., Felzcerek*, 75 F.3d at 117; *Matter of Devera*, 16 I & N Dec. 266, 270 (BIA 1977) (affirming reliance on affidavit where the allegations were corroborated by the testimony of other government witnesses, and the affidavit appeared to fit within exception to hearsay rule; but expressly reserving judgment as to whether "a finding based primarily upon judicially inadmissible evidence would comport with the requirements of fundamental fairness.")

■ Ultimately, hearsay evidence offered by the government in immigration proceedings must be tested for reliability and trustworthiness. *Felzcerek*, 75 F.3d at 114. This court turns to consider the quality of the evidence proffered by the INS in opposition to Kiareldeen's applications for release on bond and for relief from removal. The following facts are undisputed, except where noted.

The unclassified evidence offered by the INS consists of five separate reports from the FBI's Joint Terrorism Task Force (the "JTTF"). *See* Habeas Petition, Exhibits A–E. The last of these reports, containing the most detailed information, alleges that: (1) the JTTF has "developed information" that Hany Kiareldeen is a suspected member of a terrorist organization dedicated to committing acts of violence against the people of the United States or its allies; (2) "a source advised that" approximately one week before the bombing of the World Trade Center ("WTC"), Kiareldeen hosted a meeting at his Nutley home with several of the bombing conspirators, including convicted co-conspirator Nidal Ayyad, in which the bombing plans were discussed; and (3) "a source advised Kiareldeen expressed a desire to murder Attorney General Janet Reno" for her role in convicting the WTC bombing conspirators. Because the INS submitted virtually all its substantive evidence *in camera* and under seal to the immigration judge, neither petitioner nor this court has access to any other allegations made by the Service.

The petitioner speculates that one likely source of the government's allegations is his ex-wife Amal Kamal, whom he claims seeks revenge after a bitter divorce. *See* April 2, 1999 Decision of Immigration Judge Meisner granting Kiareldeen's application for discretionary adjustment of status and admitting Kiareldeen for permanent residence at 2, 13–14, attached as Exhibit F to Habeas Petition. (hereinafter "Meisner"). During his removal hearings before the Immigration Judge, the peti-

tioner asserted, by testimony and police reports, that he had been arrested approximately six times because of false accusations by Ms. Kamal of domestic violence charges. Because of the lack of sufficient evidence, none of these charges was prosecuted. Meisner at 8–10, 17. At his hearings, the petitioner produced evidence that during one of these incidents, on March 19, 1995, Ms. Kamal had made allegations to a detective that Kiareldeen and his brother had ties to certain Islamic groups. The INS and the FBI were informed of these allegations. Meisner at 9. The petitioner also submitted evidence that during another incident on July 18, 1997, Ms. Kamal reported to the police that he had threatened to put a bomb in her car unless she permitted him to visit their daughter in accordance with a visitation agreement. At a hearing on a domestic violence restraining order arising from this incident, the state family court found that the allegations of threats were not believable and dismissed Ms. Kamal's complaint. Meisner at 9.

Kiareldeen attempted to obtain the testimony of his former wife at his removal proceedings by service of subpoena. In response, the INS filed an unsuccessful motion to preclude the petitioner from asking witnesses the question, "whether or not they have or have not spoken to/contacted/been interviewed by any law enforcement entity." Ms. Kamal appeared at the removal hearing on August 12, 1988, and refused to answer a question about her discussions with the FBI, despite the IJ's instructions. Eventually, the Immigration Judge directed the parties to question her through interrogatories. The removal proceedings resumed in February 1999. The petitioner claims that when the IJ asked the INS attorneys if they sought to present any evidence in open court, they initially replied that they would call Ms. Kamal to the stand. Kiareldeen further alleges that after the lunch break, the INS attorneys informed the judge that they had decided not to call Ms. Kamal.

This court has carefully reviewed the decisions of Immigration Judge Meisner and the Board of Immigration Appeals, and concludes that under these circumstances the petitioner has raised serious questions about whether the INS made reasonable efforts to produce Ms. Kamal for cross-examination, or whether "the only apparent reason for the INS's decision not to call [the accuser] ... was to avoid subjecting her to cross-examination." *Saidane*, 129 F.3d at 1065–66. However, the court need not rely on this issue to resolve the issue. The government committed far more serious error by failing to produce any other witnesses in support of its allegations, either from the JTTF or from the INS.

At his removal hearings, the petitioner proffered exculpatory testimony and documents, including evidence that he did not live in Nutley at the time he was alleged to have hosted a meeting with the bombing conspirators there. He also offered testimony of an expert witness, Dr. Mylroie, who has been described by a former FBI director as "one of the world-class experts regarding Islam and the World Trade Center bombing." Meisner at 14. Dr. Mylroie testified that although telephone toll logs were crucial to establish the nature of the conspiracy, she had found no record of any calls between Kiareldeen and any of the conspirators. From this and other evidence, Dr. Mylroie opined that Kiareldeen was not involved in the WTC bombing. After considering the expert, documentary, and factual evidence presented by Kiareldeen, Judge Meisner found that the petitioner had raised "formidable doubts about the veracity of the allegations contained in the JTTF reports."

Nonetheless, the INS did not produce any further evidence to rebut the petitioner's assertions, and instead relied on its original *in camera* submissions regarding public security. Throughout the proceedings, the INS produced neither original source material nor live witnesses to sup-

port its allegations. *See* June 29, 1999 Decision of the Board of Immigration Appeals denying petitioner's application for bond redetermination, Dissenting Opinion by Judge Anthony Moscato at 2, attached as Exhibit H to Habeas Petition ("Moscato Dissent"). From the above, the court finds that in the petitioner's case, "the government's choice whether to produce a witness or to use a hearsay statement [was] wholly unfettered." *See Baliza,* 709 F.2d at 1234. Despite repeated requests from the Immigration Judge, the government made no recorded efforts to produce witnesses, either *in camera* or in public, to support its allegations of terrorism. The petitioner was thus denied the opportunity to meaningfully cross-examine even one person during his extended detour through the INS' administrative procedures. The INS' actions unconstitutionally damaged Kiareldeen's due process right to confront his accusers. The quality of the evidence offered by the government as the basis for petitioners' continued detention does not attain that level of reliability sufficient to satisfy the constitutional standard of fundamental fairness. Even the majority opinion of the Board of Immigration Appeals, which overruled Judge Meisner's decision to release the petitioner on bond, noted: "Like the Immigration Judge and the dissent, we have some concerns about the reliability of some of the classified information." The court finds that to be an understatement.

The court's decision is enforced by an additional constitutional concern: the petitioner alleges that the failure of the INS and the FBI Task Force to provide detailed information to the Board of Immigration Appeals disabled the Board from meaningfully exercising its discretion. The INS' own regulations direct that the Board "shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case." 8 C.F.R. § 3.1(d)(1); *see also* 8 U.S.C. § 1226 (characterizing the decision to detain or release an alien on bond as subject to the Attorney General's discretionary judgment). The petitioner asserts that the bare-bones character of the hearsay report and the government's failure to produce corroborating witnesses effectively required the IJ and the BIA to defer to the accusations of the FBI Task Force. As the dissenting member of the BIA panel wrote: "In the end, the Immigration Judge was left, as is this Board, with a pair of difficult alternatives: 1) accept the allegations as proven, based solely upon the FBI's statement regarding the credibility of the source of the classified information ... or 2) conclude that the Service did not prove its case and grant relief to the alien." Moscato Dissent to BIA Opinion at 2.

Our Supreme Court, by *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), ruled that the BIA could not legitimately refuse to exercise its discretion when reviewing an application for suspension of deportation. "[I]f the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience." *Id.* at 266–67, 74 S.Ct. 499. Because the BIA's denial of the petitioner's application may have been impermissibly prejudged based on a confidential list of "unsavory characters," including petitioner, that had been issued by the Attorney General, the Court directed that the petitioner be granted a new hearing. *Id.* at 268, 74 S.Ct. 499; *see also Matter of Burbano,* 20 I & N Dec. 872 (BIA 1994); *Cf. Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) (affirming the *Accardi* principle that the Attorney General cannot dictate the actions of the BIA, but finding that the petitioner had not presented evidence of prejudgment sufficient to warrant vacatur).

The Third Circuit likewise condemns INS procedures which deny aliens access to a neutral judge, one of the "most basic

of due process protections." *Marincas v. Lewis*, 92 F.3d 195 (3rd Cir.1996). The *Marincas* Court invalidated the BIA's interpretation of an INA provision which provided only a summary nonadversarial interview process to stowaway aliens seeking asylum. "In order to fully and fairly review a decision entered in a case, the Board must have before it the primary evidentiary matters relied upon by the initial adjudicator ... The Board needs to know the questions asked an applicant, as well as his responses, before we can evaluate whether a notice of intent to deny accurately and thoroughly reflects what transpired in the proceedings before the asylum officer and whether the applicant's ... claim was adequately developed in those proceedings." *Id.* at 201. Notably, this decision discussed the need for fair procedures even as applied to aliens seeking admission, a group that the Court admitted is entitled to only the statutory rights granted by Congress.

Here, although the BIA apparently considered the classified information presented by the INS, *see* BIA Decision at 5, the dissenting judge on the panel found that "based on the submissions of the Service, which consist of material from the Federal Bureau of Investigation, it is impossible to make a judgment regarding either the absolute truth or the relative probity of the evidence contained in the classified information." Moscato Dissent to BIA Opinion at 1. Under these circumstances, the court finds that the INS' reliance on evidence that could not be tested for reliability denied the petitioner the independent adjudication to which he is entitled. The failure of the INS to submit evidence that allowed the BIA to conduct a meaningful administrative review provides additional basis for the grant of petitioner's writ, and for his immediate release.

### Conclusion

Here, the court cannot justify the government's attempt to "allow [persons] to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded." *Bridges*, 326 U.S. at 153–54, 65 S.Ct. 1443. The writ of habeas corpus relief is granted. Respondents are ordered to release immediately the petitioner from INS custody. The court awards to the petitioner reasonable costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. The case is remanded to the INS for any further proceedings consistent with this opinion.

### ORDER

This matter is before the court on the petition for a writ of habeas corpus brought by Hany Mahmoud Kiareldeen. Upon consideration of the submissions of the parties, and upon the oral argument on August 27, 1999, by David Cole, Esq., for petitioner, and Douglas Ginsburg, Esq., for respondents, and for the reasons stated in the accompanying opinion:

It is on this day of October, 1999:

ORDERED that a writ of habeas corpus be issued forthwith, and it is further

ORDERED that the respondents release the petitioner immediately from INS custody, and it is further

ORDERED that the petitioner within 30 days of this order submit to this court an application for fees and other expenses, and that the respondents pay to the petitioner reasonable costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and it is further

ORDERED that the case is remanded to the INS for any further proceedings necessary.