**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1058
_____

LOSSENY DOSSO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
Agency No. A073-189-051
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2014

Before:  RENDELL, CHAGARES, and JORDAN, Circuit Judges.

(Opinion Filed:  July 16, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Losseny Dosso petitions for review of a December 12, 2012 decision of the Board

of Immigration Appeals ("BIA") approving the Immigration Judge ("IJ")'s decision

granting the Department of Homeland Security ("DHS")'s motion to pretermit Dosso's

application for cancellation of removal and ordering his removal to Cote d'Ivoire. For the reasons that follow, we will deny Dosso's petition for review.

I.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition. Dosso, a native and citizen of Cote d'Ivoire, was admitted to the United States on or about November 2, 1991, as a nonimmigrant visitor with authorization to remain for a temporary period. Dosso remained in the United States beyond the time period authorized, and submitted an application for asylum with the former Immigration and Naturalization Service in 1993. The record does not indicate whether this application was ever adjudicated. In April 2005, Dosso submitted a second asylum application, in which he asserted that he left Cote d'Ivoire due to past persecution and that he fears future persecution on account of his religious beliefs and ethnicity. The asylum officer referred Dosso's case to an IJ, and DHS initiated removal proceedings against Dosso by filing a Notice to Appear, charging him with removability pursuant to 8 U.S.C. § 1227(a)(1)(B). In October 2005, Dosso, through counsel, admitted the allegations in the Notice to Appear and conceded removability, but thereafter resubmitted his asylum application and additionally sought withholding of removal, protection under the Convention Against Torture ("CAT"), and cancellation of removal.

In June 2008, following an administrative hearing, the IJ granted Dosso's application for cancellation of removal.[1] At the hearing, Dosso testified that he was the

---

[1] Cancellation of removal is available to an alien who is inadmissible or deportable from the United States if the alien: "(A) has been physically present for a continuous period of

2

sole caretaker for his then ten-year-old son, Bekro, who is a United States citizen. Dosso explained that while Bekro's mother, Massea Dosso, was in the United States, he had not seen her since Bekro was five years old and he did not know her whereabouts. He also testified that Bekro lived with him, and that he was solely responsible for Bekro's emotional and financial well-being. The IJ determined that Dosso's son would suffer extreme hardship if Dosso was removed, in view of the "abandonment of the mother and the ethnic conflict in Ivory Coast." Appendix ("App.") 143.

During the hearing, Dosso initially testified that another of his children, his older son Aboubakar, was living in Cote d'Ivoire. However, after cross-examination and a reminder from the IJ that DHS had the ability to search its databases for Aboubakar's name and birth date to determine whether he was in the United States, Dosso admitted that Aboubakar was also living with him in the United States. Dosso testified that he had previously lied because he was "scared" for Aboubakar, and a friend had advised him that it would be "dangerous" to reveal that Aboubakar was in the United States because Aboubakar could be deported. App. 138. The IJ accepted Dosso's explanation, but told him that by "trying foolishly to protect Aboubakar, you could be jeopardizing Bekro's life." App. 139. The IJ then asked if Dosso was lying about "Massea, the mother of [his]

not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; (C) has not been convicted of [certain] offense[s]"; and "(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1). Cancellation of removal is discretionary: the Attorney General may, but is not required to, grant cancellation, even when if the statutory criteria are met. See Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010).

3

children, that [he] lost touch with her, it's been five years and [he] ha[d] no contact with her," and Dosso swore to the truthfulness of that statement.  App. 140.  Accordingly, the IJ granted Dosso's application for cancellation of removal.  However, the IJ instructed the parties that, should DHS discover additional evidence regarding the location of Bekro's mother, the IJ would entertain a motion to reopen, and it would not be denied "solely on the grounds that the evidence was otherwise [previously] discoverable."  App. 141.  Counsel for both parties agreed that this was fair.  App. 142.  The IJ noted that "[a]s a matter of discretion, . . . [Dosso] came very close to having [his] case denied" because of his testimony regarding Aboubakar.  App. 143.  Because the IJ granted Dosso's application for cancellation of removal, he did not address Dosso's eligibility for asylum, withholding of removal, or relief under the CAT.[2]

The following month, DHS filed a motion to reopen Dosso's removal proceedings, asserting that it had newly discovered evidence that Dosso had lied during his hearing regarding the alleged abandonment of Bekro by his mother.  In support of the motion, DHS included an official report documenting an investigation undertaken by Immigration and Customs Enforcement Special Agent Alexander Zuchman and Philadelphia Police Detective Marta Santos.  See App. 49.  The report, which was prepared and signed, but not sworn, by Special Agent Zuchman, stated that he and Detective Santos had obtained information through various database checks that Massea Dosso was working out of a hair salon in Philadelphia.  On July 19, 2008, they went to the salon to interview her.

---

[2] The record is silent on the status of Dosso's claim under the CAT, and he does not appear to mention it in subsequent proceedings.

After several minutes, Special Agent Zuchman called Massea Dosso, and she answered and informed him she would be at the salon in a few minutes. She arrived in a taxi cab driven by petitioner Dosso. The report states that it was "evident that Losseny Dosso knows where Massea Dosso works, how to contact her if needed, and where she lives." App. 50. The officers interviewed Massea Dosso, who informed them that she and petitioner Dosso were separated and lived apart, that she is the mother of both Aboubakar and Bekro Dosso, that both children live with petitioner Dosso, and that she and petitioner Dosso "both" care for the children. App. 50.

In October 2008, the IJ granted the motion to reopen and the Government filed a motion to pretermit Dosso's application for cancellation of removal, arguing that Dosso could no longer demonstrate good moral character because he had provided false testimony under oath in order to gain a benefit under the Immigration and Naturalization Act ("INA"). Dosso submitted a reply, arguing that he continued to meet the statutory requirements for cancellation of removal and that the information included in the investigative report was unreliable. The reply also stated that, based upon the advice of counsel, Dosso would invoke his Fifth Amendment right not to incriminate himself and would not submit an affidavit in response to DHS's motion to pretermit. He encouraged the IJ not to draw an adverse inference from his refusal to submit an affidavit.

Subsequently, at a May 2009 hearing, the IJ noted that, in a prior conference between the parties, DHS had indicated that there was a possibility that Dosso would be prosecuted in federal court because of his prior false testimony and had given Dosso an offer to stipulate to an order of removal and withdraw all applications for relief in

5

exchange for avoiding criminal prosecution. Dosso declined to do so, and the IJ continued the hearing two more times to await a determination as to whether the United States Attorney's Office would prosecute Dosso. On March 15, 2011, the hearing resumed and Dosso stated that he intended to rest his case on his reply to the motion to pretermit. DHS confirmed that no criminal prosecution against Dosso had been initiated at that time. At the hearing, before the IJ rendered his decision, he asked Dosso's attorney if "there was any other further evidence or further motion to be made by the respondent," and Dosso's attorney replied in the negative. App. 166. The IJ asked if it was "only the cancellation application that will be the subject of this decision in light of the prior withdrawals of the 589," and Dosso's attorney responded, "Right, that's as I understand it, yes." App. 166-67.

The IJ then rendered an oral decision granting the motion to pretermit, finding that Dosso was not a person of good moral character because, as demonstrated by the information contained in the investigative report, he had given false testimony for the purpose of obtaining a benefit under the immigration laws, in violation of 8 U.S.C. § 1101(f)(6). The IJ found that the investigative report was a "presumptively reliable document at least standing for the proposition that the respondent's testimony that he has not seen his ex-wife, that is, the mother of Bekro, for a number of years was inherently implausible, factually incorrect, and a false statement in all material respects," and "[t]o the extent that there were any mitigating circumstances or explanations that might have explained why the respondent showed up driving a taxicab and driving his ex-wife to work at the hair salon at a period shortly after the hearing," the "respondent was given an

6

opportunity to provide an affidavit to explain, or even testify in court today, and he has declined to do either." App. 17-18.

Dosso appealed the decision to the BIA, and the BIA dismissed the appeal on December 12, 2012. In relevant part, the BIA concluded that the IJ had not erred in accepting the investigative report as evidence of Dosso's false testimony, explaining that "an Immigration Judge may receive into evidence any oral or written statement which is material and relevant to any issue in the case" and that such evidence "need[ed] only [to] be probative and its use fundamentally fair." App. 5. The BIA rejected the claim that the report was unreliable, noting that "[c]ourts have recognized the inherent trustworthiness attributable to 'public records or reports.'" App. 5. The BIA observed that Dosso "had an opportunity to present [] evidence demonstrating the lack of reliability of the report but declined to do so," and the record supported the conclusion that "the respondent's attorney decided not to demand the testimony of the ICE agent." App. 6. The BIA characterized these decisions as tactical ones made by Dosso's attorney, and noted that, absent egregious circumstances, a petitioner is "bound by the tactical decisions and actions made by his attorney acting in his professional capacity." App. 6. The BIA also declined to remand Dosso's case to the IJ for adjudication on his asylum and withholding claims, determining that, at the March 15, 2011 hearing, when asked whether Dosso was seeking additional relief from removal, counsel indicated that he was only seeking cancellation of removal, and Dosso was bound by his attorney's decision not to pursue the asylum claim. App. 6. With the assistance of new counsel, Dosso timely petitioned for review of the BIA's order.

7

## II.[3]

Where the BIA "issues a decision on the merits and not simply a summary affirmance, we review the BIA's, and not the IJ's, decision." Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006).  When the BIA adopts the IJ's findings and discusses some of the bases for the IJ's decision, we review both decisions.  See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2006).  We review the "BIA's legal decisions de novo, but will afford Chevron deference to the BIA's reasonable interpretations of statutes which it is charged with administrating."  Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005).  "We review the BIA's factual determinations under the substantial evidence standard," and we will "affirm the BIA's findings unless any reasonable adjudicator would be compelled to conclude to the contrary."  Toussaint v. Att'y Gen., 455 F.3d 409, 413 (3d Cir. 2006).

## III.

Dosso challenges the BIA's denial of his petition for review on two grounds. First, he argues that the IJ and BIA erred in finding that Dosso lacked good moral character, because the decisions were based on a finding that Dosso had presented false testimony, but that conclusion was based on an unsworn, unsupported, unreliable investigative report, and Dosso was not given an opportunity to cross-examine the author of the report.  Second, he asserts that the BIA erred in refusing to remand the case for consideration of Dosso's applications for asylum and withholding of removal, because

---

[3] The BIA had jurisdiction over this matter pursuant to 8 C.F.R. § 1003.1(b)(3).  We have jurisdiction pursuant to 8 U.S.C. § 1252.

both the IJ and Dosso's attorney were under the mistaken belief that the asylum and withholding applications had been withdrawn, and the BIA knew this belief was mistaken.

A.

An individual in removal proceedings is entitled to "a reasonable opportunity to . . . cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B). Dosso asserts that he was denied this right despite the IJ's promising to give it to him, because the IJ stated, in a hearing on May 29, 2009, that "if respondent were to go forward with [his cancellation application] now that there is an investigative report, hypothetically, separate and apart from any criminal prosecution, the respondent did not wish to withdraw the cancellation application, then I would give the Government an opportunity to bring a witness in to authenticate the investigative report and be subject to examination on what happened during that examination." App. 148. Dosso asserts that the IJ also stated that "certainly the Government is going to need witnesses to substantiate that report." Dosso Br. 8 (citing App. 74). Dosso argues that he "asserted in various filings that he was concerned about the lack of information in the report and its relative lack of detail and the fact that it was not a sworn statement." Dosso Br. 8. Accordingly, Dosso argues that his counsel did not waive the right to cross-examination, but rather was denied the right to do so despite being promised that right and repeatedly challenging the reliability of the report.

We acknowledge that individuals in removal proceedings have both a constitutional and statutory right to an opportunity to cross-examine witnesses presented

9

by the Government. See Hernandez-Guadarrama v. Ashcroft, 394 F.3d 674, 681 (9th Cir. 2005). However, there is simply no evidence in the record that Dosso was denied such an opportunity here. Dosso does not, and cannot, point to a single passage in the record in which he demanded an opportunity to cross-examine the author of the investigative report and his request was denied.[4] Indeed, his characterization of the exchange that occurred between his counsel and the IJ on May 29, 2009 is inaccurate. In response to the IJ's statement that he would give the Government an "opportunity" to bring in a witness to authenticate the investigative report, Dosso's attorney responded, "Right." App. 148. The IJ continued, "And of course the respondent would then have his constitutional rights to be concerned about, about what, if anything, he says if he's recalled as a witness." App. 148. Dosso's attorney (not the IJ himself, as Dosso asserts), responded, "Right. And obviously that would also play into any possible criminal prosecution. Certainly the Government is going to need witnesses to substantiate that report. So since that's in the criminal arena, obviously conclusions there would be binding here." App. 148 (emphasis added). A fair reading of this exchange indicates that, not only was the comment regarding the "need" for witnesses made by Dosso's counsel, not the IJ, but also Dosso's counsel was commenting on the need for cross-examination in the criminal, not

[4] Dosso argues that the record is incomplete, because the record references a master calendar hearing that occurred in February 2009, but does not contain a transcript for the hearing. However, that hearing, which both parties agree focused only on setting Dosso's deadline to respond to the motion to pretermit, see App. 46, 62, occurred several months prior to any discussion of cross-examining the DHS investigator. Dosso's attorney does not assert that his previous counsel requested cross-examination at that hearing. Accordingly, for purposes of this appeal, the record is complete, and, even if it is not, there is no prejudice in failing to include the transcript of a master calendar hearing which both parties agree contained nothing of importance.

administrative, context. Accordingly, it appears from the record that the IJ gave Dosso's counsel an opportunity to request cross-examination of the author of the report, and Dosso's attorney never took advantage of this opportunity. Notably, a "reasonable opportunity" is all that is required by 8 U.S.C. § 1229a(b)(4)(B). Dosso also did not take advantage of the opportunity, provided by the IJ, to provide evidence to rebut the contents of the investigative report or call their veracity into question. The BIA was thus correct to characterize the failure to request cross-examination, despite being given an opportunity to do so, as a litigation tactic, and "[a]n alien is generally bound by the actions of his attorney." Calla-Collado v. Att'y Gen., 663 F.3d 680, 683 (3d Cir. 2011).

Dosso makes additional arguments regarding the reliability of the investigative report. In immigration proceedings, the Federal Rules of Evidence do not apply, and the admissibility of evidence depends on "whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law." Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003) (quotation marks omitted). "In the evidentiary context, fairness is closely related to the reliability and trustworthiness of the evidence." Id. (quotation marks omitted).

Dosso argues that the BIA erred in characterizing the report as an inherently reliable "public record" because "the report is not public, but rather is an internal ICE document." Dosso Br. 11. However, this argument is unpersuasive. Even applying the Federal Rules of Evidence, there is no requirement that "public records" containing hearsay actually be available to the public in order to be admissible. See Fed. R. Evid. 803(8). Rather, a record or statement of a public office is admissible if it sets out, inter

11

alia, "in a civil case . . . factual findings from a legally authorized investigation," and "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A),(B).

In the immigration context, courts have recognized that Government records are inherently reliable, and "[t]he burden of establishing a basis for exclusion of evidence from a government record falls on the opponent of the evidence, who must come forward with enough negative factors to persuade the court not to admit it." Espinoza v. INS, 45 F.3d 308, 310 (9th Cir. 1995).[5] This rule is based on the "assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." Id. (quotation marks omitted). In this case, Dosso was given the opportunity to come forward with evidence to establish a basis for excluding the investigative report, but declined to do so. Even accepting Dosso's explanation that he

---

[5] Dosso argues that, by requiring him to proffer evidence rebutting the contents of the investigative report, the IJ and the BIA incorrectly shifted the burden onto him to prove that the report was unreliable. He asserts that, because the BIA "specifically invoked" 8 U.S.C. § 1101(f)(6) as a statutory bar to cancellation of removal under 8 U.S.C. § 1229b(b)(1)(B), the decision is essentially a finding of inadmissibility for fraud pursuant to 8 U.S.C. § 1182(a)(6)(C), and the Government maintains a burden of proof by "clear and convincing" evidence when demonstrating removability or inadmissibility. However, this is not an accurate characterization of the instant case. In order to qualify for cancellation of removal, an applicant must demonstrate, inter alia, that he has "good moral character." See 8 U.S.C. § 1229b(b)(1)(B). With regard to the burden of proof, a petitioner seeking cancellation of removal "shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion." 8 C.F.R. § 1240.8(d); see also Pareja, 615 F.3d at 186 (noting that the Attorney General may cancel an alien's removal only if "the alien meets her burden of establishing eligibility"). Because the investigative report cast doubt upon Dosso's showing that he had met the "good moral character" eligibility requirement, it was not error for the BIA to place the burden on him to rebut the information contained in the report.

did not want to testify for fear of self-incrimination, there are several items of evidence Dosso could have proffered to rebut the contents of the report, including affidavits from Massea Dosso, his children, or friends, stating that Massea Dosso had no contact with Dosso or the children. Because Dosso failed to provide any such evidence, the BIA did not err in finding that the investigative report was reliable.

B.

Dosso also asserts that the BIA erred in declining to remand the case for adjudication of his asylum and withholding of removal applications. He argues that, because the IJ and Dosso's attorney mistakenly believed Dosso's asylum and withholding applications had previously been withdrawn when the IJ issued his decision on March 15, 2011, the attorney's confirmation that Dosso was only pursuing a cancellation of removal application at the time was in error, and should be corrected.

Dosso is correct that his asylum and withdrawal applications had not, in fact, been withdrawn prior to the March 15, 2011 hearing, as the applications were dismissed without prejudice on June 30, 2006, but were subsequently reinstated by a visiting IJ on July 26, 2006. However, counsel was, or reasonably should have been, aware of this fact: at a hearing on May 29, 2009, the IJ reminded counsel that Dosso had "an asylum claim, or at least a withholding claim pending." App. 146. Subsequently, at the March 15, 2011 hearing, the IJ gave Dosso's counsel a chance to make "any further motion," which he declined. App. 166. Dosso's attorney specifically confirmed the IJ's understanding that it was "only the cancellation application that will be the subject of this decision in light of the prior withdrawals of the 589." App. 166. Given the fact that counsel had been

13

reminded that the asylum and withholding applications were pending two years prior, it is likely that counsel's decision to withdraw them at the March 15, 2011 hearing was a tactical decision to which Dosso was bound, as the BIA concluded. See Calla-Collado, 663 F.3d at 683. However, even if Dosso's counsel withdrew these applications in error, a client is generally bound by an admission of counsel made during a proceeding, and is released only in "egregious circumstances." See In re Velasquez, 19 I. & N. Dec. 377, 382 (BIA 1995). There are no such circumstances here: at worst, this was an oversight on the part of Dosso's counsel. Accordingly, we hold that the BIA did not err in declining to remand Dosso's case for consideration of his asylum and withholding applications.

## IV.

For the foregoing reasons, we will deny Dosso's petition for review.